**Ada LOVE et al.**

**v.**

**TEMPLE UNIVERSITY—OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, Defendant and Third-Party Plaintiff,**

**v.**

**The INTERNATIONAL BROTHERHOOD OF UNIVERSITY EMPLOYEES et al.**

**Civ. A. No. 72–1717.**

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1973.

Peter Platten and Richard Z. Freemann (Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa.), for defendant and third-party plaintiff, Temple University.

Richard B. Sigmond (Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa.), for third-party defendants, Building Service Employees, International Union (Local 69) and David M. Russo, Trustee ad litem.

Robert J. Sugarman (Dechert, Price & Rhoads, Philadelphia, Pa.), for third-party defendants, International Brotherhood of University Employees, Earl Mack, Willie L. Reeves, Wesley Allen, William E. DeVan, Craig Bond, Melvin Reddish, Wilbur Love, James Moore, Ashmore Johnson, and Theophilus Woodson.

William J. Kilberg, Solicitor of Labor, Carin A. Clauss, Associate Solicitor of Labor, Washington, D. C., Louis Weiner, Regional Solicitor, Stephen K. Ernst, Atty., Philadelphia, Pa., for Secretary of Labor.

HIGGINBOTHAM, District Judge.

## OPINION

This matter is before the Court on motions by the third-party defendants to dismiss a third-party complaint filed against them by Temple University (hereinafter referred to as "Temple"). The third-party defendants include the Building Service Employees International Union, Local No. 69 ("Local 69"); the International Brotherhood of University Employees ("IBUE"); David M. Russo, Earl Mack; Willie L. Reeves, Wesley Allen, William E. DeVan, Craig Bond, Melvin Reddish, Wilbur Love, James Moore, Ashmore Johnson, and Theophilus Woodson. The named individuals, excluding David M. Russo who is a trustee ad litem for Local 69, are or had been officers, shop stewards and/or negotiating committee members of IBUE.

The question presented is whether an employer sued for violating the Equal Pay Act of 1963, Section 6(d)(1) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 206(d)(1),[1] can implead a labor organization seeking reimbursement for any damages which might be incurred as a result of violations of said Act? The issue is in some ways apparently one of first impression, though language on this precise point can be found in several decisions. Because of the significance of any ruling, the Secretary of Labor who is responsible for the administration and enforcement of the Act, has requested and been granted leave to file a brief as *amicus curiae*.[2] For reasons which follow, the Court finds that the motions to dismiss as to Local 69 and David M. Russo will be granted, but rulings on motions of the other third-party defendants will be reserved at this juncture until the conclusion of trial once all the evidence has been adduced and the Court has a complete factual record before it.

The facts are not complex and can be stated in an abbreviated fashion.

Last Fall, several females who have been employed by Temple in the capacity of "cleaners" or "maids", instituted an action against Temple under Section

[1]. Section 6(d) provides in relevant part:

"(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work .on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality or production; or (iv) a differential based on any other factor other than. sex; *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

[2]. Since the motions of the third-party defendants were filed, the Secretary of Labor has filed a motion to intervene; said motion was granted and thus the Secretary of Labor is now a party of record in the case.

16(b) of the Act, 29 U.S.C. § 216(b),[3] for non-compliance with the equal pay provisions of the Act. The complaint alleged that under the governing collective bargaining agreements (1) employees classified as "janitors" received higher wages than the maids or cleaners; (2) only men were hired as janitors and only women as maids; (3) the duties performed by each group were essentially identical.

Temple filed a third-party complaint against the above-named unions and individuals, · contending that if Temple breached the Act it did so only because the unions and their agents caused it to pay the differential wages in contravention of Section 6(d)(2) of the Act, 29 U.S.C. § 206(d)(2).[4] In support of this allegation Temple asserts that the collective bargaining agreements specified that janitors be paid at a higher rate than maids and that this wage structure was proposed and designed solely by the unions.

The only other facts which need be preliminarily mentioned are that from August 1, 1968 to June 30, 1970, Local 69 was the collective bargaining representative for Temple and the designated employees in question. Local 69 was thereafter replaced by IBUE which has been the relevant labor organization from July 1, 1970 to the present.

3. Section 16(b) states:
"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsec-

## I.

At the outset it should be emphasized that Temple acknowledges that there is no explicit statutory authority in the Fair Labor Standards Act or anything in the legislative history which specifically recognizes or creates a civil cause of action in the employer for recovery of damages against a labor organization. Temple argues, however, that federal courts can and in fact have in the past fashioned a federal remedy where a federal right existed but there was no extant remedy to protect or enforce that right. Accordingly, Temple urges that this Court, either by premising the appropriate relief on its equitable powers or bottoming it on common law tort principles, provide the remedy necessary for complete implementation and effectuation of any rights which require vindication.

Initially, the Court notes that tort liability will be imposed on an individual whose conduct has been proscribed by certain legislation. The Restatement (Second) of Torts § 286 (1965) has enunciated the criteria as follows:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

tion to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection."

4. Section 6(d)(2) reads:
"No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection."

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

 Furthermore, federal courts have been instructed that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed.2d 939 (1946). *Accord, e. g.,* Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969).

 In Wirtz v. Hayes Industries, Inc., 58 CCH Lab.Cas. ¶ 32,085, at 43,556 (N.D.Ohio 1968) a court for the first time considered whether in an equal pay suit there was any substantive basis for a third-party complaint by the employer against the union.[5] In ruling that a federal court lacked power to grant monetary relief to an employer who had allegedly been the victim of a Section 6(d)(2) violation, the Court offered the following insights and observations:

"A reading of the statute [Section 6(d) of the Fair Labor Standards Act] and its legislative history does not disclose a purpose to make the union jointly liable in damages, but rather to give the Secretary of Labor power to enjoin violations of the Fair Labor Standards Act where a union is responsible, as well as power to enjoin employers from future violations and require payment for past ones. 29 U.S.C. § 215(a)(2) makes it unlawful for any person to violate any of the provisions of Section 206, and 29 U.S.C. § 217 gives the District Courts jurisdiction to restrain violations of section 215(a)(2) where there has been a withholding of payments found by the court to be due to employees under the chapter. If the courts are given the express power to restrain the withholding of payments due employees by reason of past sex discrimination in violation of the Act it is impliedly only given that power against the employer, for the *union* would not be 'withholding . . . payment of minimum wages . . . '. Therefore, the only power given the District Courts against unions by this Act would be an injunction under section 217 to restrain the conduct prohibited in section 206(d)(2)." Id. at 43,-557–43,558.

Wirtz v. Hayes Industries, Inc., *supra,* can arguably be explained away by the alternative holding of the Court that irrespective of whether there could be a cause of action against a union, it was unchallenged that under the facts of that particular case, the third-party defendant was entitled to a motion for summary judgment pursuant to Fed.R. Civ.P. 56. Rather than causing the alleged discrimination, the union had "consistently attempted to abolish all differentiation between male and female press operators as to the rates of pay received." Id. at 43,558.

Moreover, the Court in the *Hayes* case carefully limited the scope of its ruling

5. Fed.R.Civ.P. 14 is procedural only and does not in any way affect the substantive rights of parties. See, e. g., 3 Moore, Federal Practice ¶ 14.03[1] at 491 (2d ed. 1972); Smith v. Whitmore, 270 F.2d 741, 744–745 (3rd Cir. 1959).

on the motion to dismiss the complaint by saying:

"This does not mean, however, that a suit could never lie in a third-party complaint against a union for contribution in a case arising under this Act, for a third-party plaintiff may state a claim grounded upon common law theories of recovery, or upon the evolving body of federal labor law being fashioned by the federal courts. If, as in the instant case, the third party complaint were on its face proper under Rule 14 of the Federal Rules of Civil Procedure, the fact that the Secretary of Labor did not originally join the union would not bar the third-party complaint and force a separate suit, for that would contravene the very purpose behind the existence of Rule 14." Id. at 43,558.

A similar result was reached in Murphy v. Miller Brewing Co., 307 F.Supp. 829, 839 (E.D.Wis.1969), where there the Court concluded that the failure of the union to strike over the discriminatory pay practices was not the kind of affirmative action which could impose liability on a union under Section 6(d)(2). It is significant to note that in Murphy a ruling on the union's motion to dismiss the complaint did not come until after an extensive trial where it had been established that the unions in question had not proposed the discriminatory provisions and had conscientiously sought to have the wage scales equalized. Thus the Murphy court did not as a matter of substantive law declare there was or was not any right of contribution for the employer.

The one decision which did authorize union contribution was in Hodgson v. Sagner, Inc., 326 F.Supp. 371 (D.Md. 1971), aff'd. sub nom. Hodgson v. Baltimore Reg. Joint Bd., 462 F.2d 180 (4th Cir. 1972) (per curiam), an action commenced by the Secretary of Labor pursuant to Section 17 of the Act, 29 U.S.C. § 217.[6] The Court there stated:

"There is no apparent reason why a union which violates Section 6(d) should be treated any differently from an employer violator. Equitably, both should be subject to the same type of decree, which in order to give full relief would necessarily include a provision requiring the payment of wages illegally withheld or caused to be withheld as well as one prohibiting any future violations of the law.

"Whether or not there is an express statutory basis for the ordering of this type of relief against the Union, this Court is satisfied that within its general equitable powers, it may, if it finds a violation of Section 6(d)(2), order an offending union to repay to the Government for distribution to the employees involved the wages that the Union caused to be wrongfully withheld." 326 F.Supp. at 373.

In Sagner, the Secretary of Labor had initially sought only injunctive relief against the union even though the union was jointly liable with the employer Sagner for violating Section 6(d)(2) of the Act. However, at the trial the Court granted the Government's motion under Fed.R.Civ.P. 15 to amend its pleadings to conform to the evidence and thus making the union jointly liable for damages as well as the imposition of injunctive relief.

The Sagner Court distinguished Wirtz v. Hayes Industries, Inc., supra, procedurally as well as factually. The egregious conduct of the union in Sagner included the union, which was fully aware of the Equal Pay Act obligations, bar-

---

6. Section 17 states:

"The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title."

gaining with the employer for the latter to pay seventy-five percent of the wages due the eligible employees under the Equal Pay Act to employees who were not entitled to receive these sums. Moreover, the union purported to secure from the rightful employees "waivers" as to their entitlement to their legal and proper wages.

' While it is true that the Secretary of Labor in the case at bar did not originally sue the union, the Secretary of Labor is now a party of record and thus is in a similar position to request joint damages if the evidence so demonstrated and warranted it.

With the exception of Wirtz v. Hayes Industries, Inc., rulings on the motion to dismiss came at the conclusion of trial, and as was previously noted, in the *Hayes* case there was substantial record evidence negating any inference of guilt by the union.

One other decision meriting comment is Tuma v. American Can Co., 6 EPD ¶ 8842 at 5580 (D.N.J. April 26, 1973), where a federal judge from this Circuit, relying in part upon the *Hayes* decision, ruled that employees and union members could not maintain a private action for damages against the union under the Equal Pay Act of 1963. The Court, citing the *Sagner* case, specifically recognized however that a federal court might possess equitable power to assess damages against a union in an injunction action instituted by the Secretary of Labor pursuant to Section 17 of the Act.

When construing legislation such as the Fair Labor Standards Act, the Court should always bear in mind the evils Congress envisaged and sought to eradicate, the comprehensive statutory enforcement scheme promulgated, and the interpreting of the Act's provisions so as to minimize statutory conflicts and maximizing the effectuation of congressional intent and objectives.

When an action is commenced under Section 16(b), it is normally brought against the employer, not against the union, since it is the employer who has wrongfully withheld the minimum wages. Section 3(d) of the Act, 29 U. S.C. § 203(d) defines "employer" to exclude a labor organization or its agents or officers unless the organization is acting as an employer. This definition of employer should be contrasted with that of "person" as denoted in Section 3(a) of the Act, 29 U.S.C. § 203(a): " 'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." "Person" has been held to include a union, its officers and members. See, *e. g.*, Bowe v. Judson C. Burns, 137 F.2d 37, 38–39 (3rd Cir. 1943); Annotation: Construction of provision of Fair Labor Standards Act (29 U.S.C. § 215(a)(3)) forbidding reprisals against any employee who has filed complaint, or the like, under the Act. 93 A.L.R.2d 610, 611–612 (1964).

In *Bowe,* the Court after setting out the relevant provisions noted the following:

"The [Fair Labor Standards] Act is carefully drawn and every term is used as a term of art. Legislative intent must be drawn from the Act as a whole. *Those portions of the Act* (Sections 6 and 7, 29 U.S.C.A. §§ 206 and 207) *relating to wages and hours do apply only to employers.*" 137 F. 2d at 38. (Emphasis added.)

Were the Court to authorize or sanction the employer's shifting of his financial responsibility to a labor organization it could be thwarting one of the pre-eminent policies of the Act that the employer be primarily liable for the payment of equal wages to employees. By the same token Congress deemed it essential that for effective enforcement of the Act any economic and competitive advantages accruing to the employer due to his non-compliance with the equal pay provisions be extinguished and the pecuniary benefits disgorged. Wirtz v. Malthor, Inc., 391 F.2d 1, 3 (9th Cir. 1968); Hodgson v. Wheaton Glass Co., 446 F.2d 527, 535 (3rd Cir. 1971); Wirtz v. Jones, 340 F.2d 901, 904–905 (5th Cir. 1965). Thus the same result of enforced payment of withheld wages by

the employer will attach even though all the affected employees cannot be located and the delinquent sums are required to be deposited in the Treasury of the United States. Wirtz v. Jones, *supra*, 340 F.2d at 904; Hodgson v. Wheaton Glass Co., *supra*, 446 F.2d at 535; Burk Builders, Inc. v. Wirtz, 355 F.2d 451, 453 (5th Cir. 1966) (per curiam); Hodgson v. A–1 Ambulance Service, Inc., 455 F.2d 372 (8th Cir. 1972).

Even assuming *arguendo* that the employer acted in good faith, which is apparently the thrust of Temple's argument, the employer might nonetheless not be able to avoid his financial liability under the Act because of the lack of wilfulness on his part or even because of the financial hardship which might be visited upon him. Wirtz v. Malthor, *supra*, 391 F.2d at 3.

As noted at the outset although federal courts should be conscientious and vigilant in safeguarding federal rights the courts should proceed with caution and defer to the expertise of the legislative branch of government when a comprehensive statutory enforcement scheme has been adopted. This might be an instance where after weighing the competing policies judicial restraint should be exercised and the matter left to Congress to determine whether it is appropriate or necessary for a civil right of action to be created in the employer against the union. In a related context the Court of Appeals for the Fifth Circuit recently confronted a similar legal question as to the desirability of a civil right of damages under the Act. In Breitwieser v. KMS Industries, Inc., 467 F.2d 1391 (5th Cir. 1972), cert. denied 410 U.S. 969, 93 S.Ct. 1445, 35 L.Ed.2d 705 (1973), the Court concluded that the child labor provisions of the Act, 29 U.S.C. § 212, did not create a private cause of action for damages for wrongful death, and no additional federal remedy was needed to supplement the meting out of criminal sanctions for violators. The equities raised therein might be regarded as far more compelling than the ones presented here in the instant case. *Cf.*, however, Fagot v. Flintkote Co., 305 F.Supp. 407 (E.D.La. 1969), where the Court held that an employee could maintain a private action for damages against his employer for wrongfully discharging him in violation of Section 15(a)(3) of the Act, 29 U.S. C. § 215(a)(3).[7]

Temple urges that the innocent employer should nonetheless be able to seek damages against the union and thus be in a position to augment the effective and vigorous enforcement of the underlying policies and goals of the statute. While Temple concedes that criminal penalties can be levied against the delinquent labor organization under Section 16(a) of the Act, 29 U.S.C. § 216(a)[8], and some relief can be sought by the Secretary of Labor pursuant to Section 17, Hodgson v. Sagner, Inc., *supra*, these measures, it argues, would prove to be inadequate to protect the employer, particularly should the Secretary be inclined not to act against the union.[9]

---

7. Section (15) provides in relevant part:
 "(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—
 ⁎ * * * *
 "(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee; . . .".

8. Section 16(a) provides:
 "Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection."

9. Temple further cites in support of its position the Equal Pay for Equal Work Regula-

The Court finds that the arguments of both the Secretary of Labor and Temple have merit and present a close legal question as to whether it would be appropriate if an employer could transfer wholly or in part his statutory obligations under the Equal Pay Act to a union. Or, conversely, would the furtherance of congressional objectives be frustrated or undermined should a court rule that a substantive basis exists for a civil suit by the employer against a labor organization?

■ At this stage of the proceedings, I am going to reserve making a ruling on these motions except as to Local 69 and David M. Russo. As to those two parties, their motions to dismiss will be granted. Under 29 U.S.C. § 255,[10] the statute of limitations requires that the action be commenced within two years after the cause of action has accrued, or within three years, if the violation was wilful. It is undisputed that the last collective bargaining agreement between Temple and Local 69 went into effect on August 1, 1968, that at the outside Local 69's association with Temple terminated on June 30, 1970, and the complaint in the case at bar was filed on August 29, 1972.

As to the other third-party defendants, a ruling will be made at the conclusion of trial. If the record then estab-

---

tions promulgated by the Department of Labor at 29 CFR § 800 et seq. Section 800.-106 provides:

"Application to labor organizations.

"Section 6(d)(2) of the Act prohibits a labor organization, representing employees of an employer having employees subject to the minimum wage provisions of section 6, from engaging in acts that cause or attempt to cause the employer to discriminate against an employee in violation of the equal pay provisions. Agents of the labor organization are also prohibited from doing so. Thus, such a labor organization and its agents must refrain from strike or picketing activities aimed at inducing an employer to institute or maintain a prohibited wage differential, and must not demand any terms or any interpretation of terms in a collective bargaining agreement with such an employer which would require the latter to discriminate in the payment of wages contrary to the provisions of section 6(d)(1). Section 6(d)(2), together with the special provision in section 4 of the Equal Pay Act of 1963 allowing a deferred effective date for application of the equal pay provisions to employees covered by specified existing collective bargaining agreements (see § 800.101) are indicative of the legislative intent that in situations where wage rates are governed by collective bargaining agreements, unions representing the employees shall share with the employer the responsibility for ensuring that the wage rates required by such agreements will not cause the employer to make payments that are not in compliance with the equal pay provisions. Thus, where equal work is being performed within the meaning of the statute, a wage rate differential which exists between male and female employees cannot be justified on the ground that it is a result of negotiation by by the union with the employer, for negotiation of such a discriminatory wage differential is prohibited under the terms of the equal pay amendment."

Opinion Letter No. 1187 of the Wage-Hour Administration (July 1, 1971) is also called to the Court's attention, where it is noted in part:

" . . . [I]t is our opinion that the Equal Pay Act, in requiring that no labor organization, or its agents, representing employees of an employer having employees subject to any provisions of section 6(d)(2) of the Fair Labor Standards Act 'shall cause or attempt to cause such an employer to discriminate against an employee in violation of' the equal pay provisions, is indicative of the legislative intent that the elimination of wage rate differentials based on sex in the establishment is a joint responsibility held by the union or unions with the employer."

10. Section 255 states:

"Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act.—

"(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless within two years after the cause of action accrued, except that a cause of action arising out of a wilful violation may be commenced within three years after the cause of action accrued."

See also, Hodgson v. Humphries, 454 F.2d 1279, 1283–1284 (10th Cir. 1972).

lishes that the union or its agents in no way caused the discrimination,[11] then on the facts their motions to dismiss will be granted and the Court will not reach the other legal question. If, on the other hand, it is determined that the union is jointly culpable, then the Court will rule as to whether an employer can recover damages from a union either under Section 6(d)(2) of the Act, on equity or tort grounds, or under any other applicable legal theory.

Finally, the aforementioned discussion does not in any way reflect upon the merits of the case and should not be so construed.

---

11. Of course, it might even be proved that there was no discrimination by anyone because the jobs in question were not equal.