Peter J. BRENNAN, Secretary of
Labor, United States Department
of Labor, Plaintiff,

v.

EMERALD RENOVATORS, INC., a
Corporation, Defendant and
Third-Party Plaintiff,

v.

SERVICE EMPLOYEES INTERNA-
TIONAL UNION, LOCAL 200, AFL-
CIO, et al., Third-Party Defendants.

No. 74 Civ. 2817 (WCC).

United States District Court,
S. D. New York.

May 23, 1975.

Francis V. LaRuffa, Regional Solicitor, U.S. Dept. of Labor, New York City, for plaintiff.

Aranow, Brodsky, Bohlinger, Benetar & Einhorn, New York City, for defendant and third-party plaintiff Emerald Renovators, Inc.

Corcoran & Brady, Local Counsel, New York City, for third-party defendants Service Employees Int'l, Union Local 200, and others.

## MEMORANDUM AND ORDER

CONNER, District Judge:

This action was commenced on June 28, 1974 by the Secretary of Labor (the Secretary) pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the Act), as amended by Section 6 of the Equal Pay Act of 1963, 29 U.S.C. § 206 (the Equal Pay Act). Defendant is charged with having violated Section 6(d)(1) of the Equal Pay Act, 29 U.S.C. § 206(d)(1),[1] when it allegedly discriminated between employees on the basis of sex by paying higher wages to certain male employees than it pays to female employees although the tasks performed by both require equal skill, effort and responsibility under similar working conditions.

The Secretary seeks a judgment pursuant to Section 17 of the Act, 29 U.S.C. § 217,[2] restraining defendant from vio-

---

1. 29 U.S.C. § 206(d)(1) provides in relevant part:

"(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality or production; or (iv) a differential based on any other factor other than sex: *Provided, That* an employer who is paying a wage rate differential in violation of this subsection, shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

2. 29 U.S.C. § 217 states:

"The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of viola-

lating the Act and ordering the payment of any back wages found by the Court to be due to the employees affected by defendant's prior violations. After serving its answer, defendant impleaded the Service Employees International Union, Local 200, AFL–CIO, and a number of its agents (the Union) claiming that any violation of Section 6(d)(1) by it was the result of pressure by the Union in violation of Section 6(d)(2) of the Equal Pay Act, 29 U.S.C. § 206(d)(2).[3] It is defendant's position that any judgment against it recovered or recoverable by the Secretary should ultimately be satisfied by the Union.

Presently before the Court are motions by the Secretary and the Union pursuant to Rule 12(b), F.R.Civ.P., to dismiss the third-party complaint. The issues raised by both motions are substantially the same so that the motions may be treated together.[4]

■ The question presented is whether an employer sued for violating Section 6(d)(1) can seek contribution or indemnity from a labor organization which has violated Section 6(d)(2). A review of the language and structure of the Act leads to the inescapable conclusion that it affords no legal basis for recovery by the employer against a labor organization or its principals in a private action for contribution or otherwise.[5]

■ Defendant concedes that there exists no statutory authority in the Act or its legislative history, see 1963 U.S. Code Cong. & Admin.News, p. 687 *et seq.*; see also, *Love v. Temple University*, 366 F.Supp. 835, 837 (E.D.Pa. 1973), which specifically provides for a civil cause of action enabling an employer to recover damages against a labor organization. It contends, however, that employers are members of the class intended to be protected by Section 6(d)(2), which places a specific duty upon a labor organization not to cause an employer to violate Section 6(d)(1), and therefore the Court, either through common law tort or general equitable principles should fashion a remedy to enforce what de-

tions of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title)."

3. 29 U.S.C. § 206(d)(2) reads:
"No Labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection."
The "paragraph (1)" reference is to the duty placed upon employers not to discriminate on the basis of sex in the payment of wages. It is this duty which is relied upon by the Secretary as the basis for his cause of action against defendant.

4. Two points raised in the motion papers—defendant's untimely filing of its third-party complaint and the naming of union officials in their individual capacity—have been disposed of by stipulation and will not be considered at this time.

5. The applicable statutory structure is as follows: The statutorily proscribed conduct of employers and unions is embodied in Sections 6(d)(1) and (2). Section 15(a)(2) of the Act, 29 U.S.C. § 215(a)(2), makes a violation of Section 6 unlawful. There are four means provided to enforce the Act:
1) Section 16(a) of the Act, 29 U.S.C. § 216(a), provides for criminal prosecution of willful violators (union or employer) by the United States Attorney;
2) Section 16(b) of the Act, 29 U.S.C. § 216(b), gives individual employees rights of action against their employers to recover unpaid wages, overtime compensation and certain liquidated damages;
3) Section 16(c) of the Act, 29 U.S.C. § 216(c), allows the Secretary of Labor to bring an action similar to the one described in 2) above on behalf of the employees, provided the suit does not involve "an issue of law which has not been settled finally by the courts"; and
4) Section 17 of the Act, 29 U.S.C. § 217, permits the Secretary of Labor to bring an action to restrain violations of Section 15(a)(2) and to pay over any wrongfully withheld wages.
Jurisdiction over any action for damages against a labor organization is conspicuously absent.

fendant views as its federally protected right not to be coerced into executing illegal collective bargaining agreements.[6]

 It is beyond peradventure that, even in the absence of a specific statutory provision, where federally protected rights have been invaded, the courts may use any available remedy to make good the wrong done. *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939, 944 (1946). This includes inferring a cause of action against an individual whose conduct has been proscribed by legislation where 1) the party seeking to recover is a member of the class for whose protection and benefit the statute was promulgated, *Restatement of Torts,* Second § 286 (1965); see *Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1969), and 2) damages are necessary to effectuate the congressional

policy underpinning the substantive provisions of the statute. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 402, 91 S.Ct. 1999, 2007, 29 L.Ed.2d 619, 630 (1970) (Harlan, J., concurring); *J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423, 428 (1964). Defendant's purported claim over against the Union does not satisfy either of these requirements.

 Although Section 6(d)(2) prohibits a union from seeking to force an *employer* to discriminate against employees on the basis of sex, it is the *employees,* the victims of the discrimination, and not the employer, who comprise the class intended to be protected. Nothing in Section 6(d)(2) creates any rights in favor of a discriminatory employer. Rather, it provides the basis for an equitable action under Section 17 by the Secretary

---

**6.** In support of its position, defendant cites the Equal Pay for Equal Work Regulations promulgated by the Department of Labor at 29 C.F.R. § 800 *et seq.* Section 800.106 provides:

"Application to labor organizations.

"Section 6(d)(2) of the Act prohibits a labor organization, representing employees of an employer having employees subject to the minimum wage provisions of section 6, from engaging in acts that cause or attempt to cause the employer to discriminate against an employee in violation of the equal pay provisions. Agents of the labor organization are also prohibited from doing so. Thus, such a labor organization and its agents must refrain from strike or picketing activities aimed at inducing an employer to institute or maintain a prohibited wage differential, and must not demand any terms or any interpretation of terms in a collective bargaining agreement with such an employer which would require the latter to discriminate in the payment of wages contrary to the provisions of Section 6(d)(1). Section 6(d)(2), together with the special provision in section 4 of the Equal Pay Act of 1963 allowing a deferred effective date for application of the equal pay provisions to employees covered by specified existing collective bargaining agreements (see § 800.101) are indicative of the legislative intent that in situations where wage rates are governed by collective bargaining agreements, unions representing the employees shall share with the employer the responsibility for ensuring that the wage rates required by such agree-

ments will not cause the employer to make payments that are not in compliance with the equal pay provisions. Thus, where equal work is being performed within the meaning of the statute, a wage rate differential which exists between male and female employees cannot be justified on the ground that it is a result of negotiation by the union with the employer, for negotiation of such a discriminatory wage differential is prohibited under the terms of the equal pay amendment."

Opinion Letter No. 1187 of the Wage-Hour Administration (July 1, 1971) is also called to the Court's attention, where it is noted in part:

"* * * [I]t is our opinion that the Equal Pay Act, in requiring that no labor organization, or its agents, representing employees of an employer having employees subject to any provisions of section 6(d)(2) of the Fair Labor Standards Act 'shall cause or attempt to cause such an employer to discriminate against an employee in violation of' the equal pay provisions, is indicative of the legislative intent that the elimination of wage rate differentials based on sex in the establishment is a joint responsibility held by the union or unions with the employer."

However, it should also be noted that these very same regulations provide for enforcement of the Act against labor organizations by either injunction proceedings instituted by the Secretary of Labor under Section 217, or by criminal prosecutions for willful violations under Section 216(a). No provision is made for private suits against unions. 29 C.F.R. § 800.-166.

to obtain civil redress against an offending union. To infer a remedy on behalf of employers would allow them to accede to the illegal demands of a labor organization with complete impunity. If the Secretary brings an action, the employer (who has violated Section 6(d)(1) ) would be indemnified by the offending union, whose treasury is funded by the affected employees' union dues. This is hardly conducive to enforcement of the Act.

■ On the other hand, if the employer is aware that it and it alone must bear the economic consequences for any violation of the Act, there would be an added incentive to resist the type of economic pressure the Union allegedly placed on defendant in this case. Moreover, if in fact a labor organization attempts to coerce an employer to agree to illegal and discriminatory wage practices, the employer has a readily available remedy before the National Labor Relations Board (the N.L.R.B.).

Section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3), (the N.L.R.A.) makes it an unfair labor practice for a labor organization or its agents to refuse to bargain collectively with an employer. Section 8(d) of the N.L.R.A., 29 U.S.C. § 158(d), requires the parties to collective bargaining to meet and confer in good faith. Either party's insistence upon the inclusion of illegal contract provisions within the collective bargaining agreement amounts to a refusal to bargain collectively in good faith within the meaning of Sections 8(b)(3) and (d). *Associated General Contractors of America, Evansville Chapter, Inc. v. N.L.R.B.*, 465 F.2d 327, 334 (7th Cir. 1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 689 (1973); *N.L.R.B. v. Amalgamated Lithographers of America*, 309 F.2d 31, 42 (9th Cir. 1962), *cert. denied*, 372 U.S. 943, 83 S.Ct. 936, 9 L.Ed.2d 968 (1963); *In re Maritime Union*, 78 N.L.R.B. 971, *enforced*, 175 F.2d 686 (2d Cir. 1949), *cert. denied*, 338 U.S. 954, 70 S.Ct. 620, 94 L.Ed. 589 (1950); see *International Typographical Union, Local 38 v. N.L.R.B.*, 278 F.2d 6, 12 (1st Cir. 1960), *rev'd in part* and *aff'd in part*, 365 U.S. 705, 81

S.Ct. 855, 6 L.Ed.2d 36 (1961) (reversal on question of legality of contract provision involved).

Therefore, since the alleged conduct of the Union was arguably an unfair labor practice under Section 8 of the N.L.R.A., defendant's proper and exclusive remedy was to have petitioned the N.L.R.B. to enjoin the Union's illegal activities. See *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ Furthermore, if the sole purpose of the Act was to recover unpaid wages for the benefit of employees protected by the statute, it might make little difference from whom the withheld wages were recovered. However, that is not the case. The Act's restitution provisions are, in the words of then Senator John F. Kennedy, to

"serve as a source of protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage." U.S. Code Cong. & Admin.News, 87th Cong., 1st Sess. 1961, Vol. 2 at p. 1621.

Thus, employers violating the provisions of the Act may be required to disgorge wages which were wrongfully withheld and deposit them in the Treasury of the United States even when the affected employees cannot be located. *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 535 (3d Cir. 1971); *Wirtz v. Jones*, 340 F.2d 901, 904–5 (5th Cir. 1965); *Love v. Temple University*, supra, and cases cited therein. Therefore, to allow discriminating employers to shift their financial responsibility to a labor organization would not effectuate but rather, would subvert the congressional policies sought to be advanced.

The maintainability of an implied third-party action against a union by an employer alleging violations of Section 6(d)(2) was first considered in *Wirtz v. Hayes*, 58 C.C.H.Lab.Case, ¶ 32,085 at 43,556 (N.D.Ohio 1968). Although refusing to rule out the possibility of recovery on a common law basis, or upon "the evolving body of federal labor law

being fashioned by the federal courts," the Court concluded that civil liability on the part of a union is unavailable in private actions under the Act, and observed:

"A reading of the statute [Section 6(d)] and its legislative history does not disclose a purpose to make the union jointly liable in damages, but rather to give the Secretary of Labor power to enjoin violations of the Fair Labor Standards Act where a union is responsible, as well as power to enjoin employers from future violations and require payment for past ones. 29 U.S.C. § 215(a)(2) makes it unlawful for any person to violate any of the provisions of Section 206, and 29 U.S.C. § 217 gives the District Courts jurisdiction to restrain violations of section 215(a)(2) where there has been a withholding of payments found by the court to be due to employees under the chapter. If the courts are given the express power to restrain the withholding of payments due employees by reason of past sex discrimination in violation of the Act it is impliedly only given that power against the employer, for the *union* would not be 'withholding * * * payment of minimum wages * * * '. Therefore, the only power given the District Courts against unions by this Act would be an injunction under section 217 to restrain the conduct prohibited in section 206(d)(2)." *Supra* at 43,557–43,558.[7]

The only case in which damages were assessed against a union for violation of Section 6(d)(2) was *Hodgson v. Sagner Inc.*, 326 F.Supp. 371 (D.Md.1971), aff'd

*sub nom. Hodgson v. Baltimore Regional Joint Board,* 462 F.2d 180 (4th Cir. 1972). In that case the Secretary had initially sought only injunctive relief against the union pursuant to Section 17. However, during the course of the proceedings it was revealed that the employer had agreed to cease violating the Act and to make restitution of previously withheld wages. On the other hand, the union, although fully aware of its obligations under Section 6(d)(2), sought to cause the employer to pay seventy-five percent of the wages which had been withheld from the eligible employees to employees who were not entitled to receive these sums. In addition, the union attempted to secure "waivers" of the wages from the employees lawfully entitled to them. The Court, ruling that its equity powers under Section 17 were sufficient to support such an order, granted a motion by the *Secretary* to amend his complaint and seek damages as well as injunctive relief against the union. Under these circumstances, the fact that the Secretary, under Section 11(a) of the Act, 29 U.S.C. § 211(a), was permitted to seek restitution from the union is irrelevant to the issue of whether the *employer* herein has standing to request such an order when it is *opposed* by the Secretary.

█ Finally, a Section 17 action ousts jurisdiction from *all* persons other than the Secretary, and defendant cannot, by means of a third-party action, arrogate to itself power delegated by Congress solely to the Secretary. See *Equal Employment Opportunity Commission v. A.T.T.*, 365 F.Supp. 1105, 1122, 1128 (E.D.Pa.1973). Where a statute vests in a particular party exclusive

---

7. In a related context, the Fifth Circuit, in *Breitwieser v. KMS Industries, Inc.,* 467 F.2d 1391 (5th Cir. 1972), cert. denied, 410 U.S. 969, 93 S.Ct. 1445, 35 L.Ed.2d 705 (1973), ruled that the child labor provisions of Section 12 of the Act, 29 U.S.C. § 212, could be enforced only through equity suits under Section 17 filed by the Secretary of Labor or criminal proceedings under Section 16(a). The Court concluded that the Act could not provide the basis for an implied wrongful death action since no addi-

tional federal remedy was needed to supplement the criminal sanctions which were specifically provided for in the statute.

On the other hand, in *Fagot v. Flintkote Co.,* 305 F.Supp. 407 (E.D.La.1969), a private action against an employer who was charged with wrongfully discharging an employee in violation of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), was *implied in favor of the employee.*

power to inforce that statute, impleader should not be permitted to expand the class of persons with standing to enforce it.

Professor Moore in his discussion of Rule 14 points out that the Rule "creates no substantive rights" and "does not 'abridge, enlarge, nor modify the substantive rights of any litigant'." He specifically states that "The Rule does not establish a right of reimbursement, indemnity nor contribution. * * *" 3 *Moore's Federal Practice*, ¶ 14.03[1] at 153 (2d Ed. 1974). This was the result in *Tuma v. American Can Co.*, 367 F.Supp. 1178 (D.N.J.1973), where Judge Lacey, citing *Hayes*, ruled that even employees and union members could not maintain a private action for damages against the union under the provisions of Section 6(d)(2), but specifically recognized that a federal court might possess equitable power to assess damages against a union in a suit for injunction instituted *by the Secretary* pursuant to Section 17.

Similarly, in *Bowe v. Judson C. Burns*, 137 F.2d 37 (3d Cir. 1943), the Court noted that the Act

> "is carefully drawn and every term is used as a term of art. Legislative intent must be drawn from the Act as a whole. Those portions of the Act (Sections 6 and 7, 29 U.S.C.A. §§ 206 and 207) relating to wages and hours do apply only to employers." 137 F.2d at 38.

The Fair Labor Standards Act of 1938 provides for its enforcement through both civil and criminal actions by specified parties. Under the circumstances of this case, there seems no need to supplement the statute with an additional remedy which Congress did not see fit to provide.

The motion is granted.

SO ORDERED.