**AMERICAN FEDERATION OF STATE, COUNTY and MUNICIPAL EMPLOYEES, AFL–CIO (AFSCME), Chappelle, et al., Plaintiffs,**

v.

**The CITY OF NEW YORK, et al., Defendants.**

**No. 84 Civ. 4529 (DNE).**

United States District Court, S.D. New York.

Dec. 27, 1984.

918

Winn Newman & Associates, Washington, D.C., Beverly Gross, General Counsel, New York City, for plaintiffs; Lisa M. Newell, Washington, D.C., and Audrey Browne, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corporation Counsel, New York City, for defendants; Elissa Hutner, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiffs brought this class action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the City of New York, the Mayor of New York and certain departments of the city government (the "city defendants"), alleging sex and race based discrimination in wages, promotion and other terms and conditions of employment. The named plaintiffs are representatives for a class of "all employees employed within the applicable limitations period by the City of New York in the classifications of Police Communications Technician (PCT) and Supervising Police Communications Technician (SPCT)." Complaint at ¶ 3.[1] The acts of discrimination alleged are that defendants: (1) maintain job classifications and assign jobs on the basis of race and sex; (2) discriminate on the basis of race and sex "by compensating PCTs and SPCTs who are predominantly female and minority less than Fire Alarm Dispatchers (FADs) and Supervisory Fire Alarm Dispatchers (SFADs) who are predominantly male and white and whose duties are substantially equal and/or require an equivalent or lesser composite of skill, effort, responsibility and working conditions ...”; (3) discriminate on the basis

---

1. This case, originally assigned to Judge Ward, was reassigned to me on July 26, 1984. On July 11, 1984, counsel for the union plaintiffs and the city defendants stipulated as to the propriety of class certification in this case. They also stipulated "that the class should be defined as all employees of Defendants who since March 5, 1983 have worked or do work in the titles of [PCTs] or [SPCTs]." Of course, this court is not bound by any such stipulation and will determine after considering all the factors in Fed.R. Civ.P. 23 and all of the facts in this case whether certification is appropriate. At a pre-trial conference held on October 3, 1984, the court, after considering the affidavits, memorandum and arguments of the parties, orally certified the class. Transcript of Proceedings of October 3, 1984 at 10. However, the court has not yet filed an opinion as to class certification and will reconsider the propriety of class certification after the completion of discovery.

of race and sex in determining promotions from PCT to SPCT; and (4) discriminate on the basis of race and sex in other terms and conditions of employment. Complaint at ¶ 4(a)–(d).[2]

On August 1, 1984, defendants filed an answer to the complaint. The answer includes a counterclaim for contribution or indemnification against the unions. The counterclaim alleges:

> In the event the City is found liable to have discriminated against plaintiffs in violation of Title VII, union plaintiffs are responsible in whole or part in that they caused or attempted to cause defendants to discriminate against plaintiffs in that it caused or attempted to cause defendants to discriminate [sic] in violation of 42 U.S.C. Section 2000e–2(a) and (c).

Answer at ¶ 28. The plaintiff unions have moved to dismiss the counterclaim.

## DISCUSSION

■ Under the doctrine of contribution, one tortfeasor seeks to avoid paying more than his proportionate share of liability by joining another tortfeasor who is also partly liable for the plaintiff's loss. In *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the Supreme Court held that an employer found liable to its employees under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, has no statutory or common law right to contribution from unions which allegedly bear partial responsibility for the statutory violations. The Court stated that an employer's right to contribution could only arise under two theories: (1) as an implied right of action under the statute; or (2) under federal common law.

■ Defendants do not have an implied right of action for contribution under Title VII. In *Northwest Airlines*, the Supreme Court examined the "language of the statute itself, the legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supercede or to supplement existing state remedies." *Northwest Airlines, supra*, 451 U.S. at 91, 101 S.Ct. at 1580. The Court found no manifestation of a congressional intent to create an implied right to contribution under Title VII. Accordingly, the statute does not provide the defendants herein with an implied right to contribution against the unions.

Defendants contend that the court, under its equitable powers, should fashion a common law cause of action for contribution against the unions. In *Northwest Airlines*, however, the Court expressly declined to "add a [common law] right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII." *Id.* at 98, 101 S.Ct. at 1584.

---

**2.** The allegations in the complaint herein are similar to the allegations in two other cases pending before me. The case of *Scotti et. al. v. City of New York, et. al.*, No. 84 Civ. 3503 (DNE) (*Scotti I*) was filed before the present AFSCME action was filed. After the AFSCME action was filed, the *Scotti I* plaintiffs filed another action which was assigned to me, *Scotti et. al. v. City of New York, et. al.*, No. 84 Civ. 5462 (DNE). The unions are not parties to either *Scotti* case.

The members of the class in the *Scotti I* are "all women who were employed by the City of New York as [SPCTs] and/or [PCTs] on or any time after three years prior to the commencement of this action or who will be employed by the City of New York in those positions in the future." *Scotti I* Complaint at ¶ 16. The *Scotti I* plaintiffs allege that the city defendants pay other city employees, who are predominantly white and male, more money for performing jobs of equivalent or less skill, effort and re-

sponsibility. The *Scotti I* claims are brought under 42 U.S.C. §§ 1981 and 1983, the Equal Pay Act, 29 U.S.C. § 206(d), and various provisions of New York State law.

*Scotti II* is brought "on behalf of all persons employed in the job classification of PCT and SPCT during the relevant statutory period." *Scotti II* Complaint at ¶ 19. The allegations in *Scotti II* are virtually identical to those contained in *Scotti I*. In *Scotti II*, however, plaintiffs also state causes of action under Title VII of the Civil Rights Act of 1964. At a pre-trial conference held on September 10, 1984, the court refused to consolidate the three cases and ordered that discovery run in tandem. The court also ordered that counsel for the unions and counsel for the *Scotti* plaintiffs, Janice Goodman, act as joint counsel for the classes in all three cases. Transcript of Proceedings of September 10, 1984 at 17–19.

The Court stated that Title VII constitutes "a comprehensive legislative scheme" that includes "an integrated system for enforcement," *id.* at 97, 101 S.Ct. at 1584, and "[t]he Judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Id.*

Defendants contend that *Northwest Airlines* is distinguishable because the defendant there brought an independent action for contribution against the union. In contrast, the employer in this case has counterclaimed against the unions. Defendant refers the court to the unpublished opinion in *Connecticut State Employees Ass'n [CSEA] v. Connecticut,* Civ. Action No. H79–197 (D.Conn. November 18, 1981) (Claire, C.J.). In *CSEA* the court stated:

> The Supreme Court's reasoning in *Northwest Airlines* does not support the plaintiffs' claim that defendants' counterclaim should be dismissed at this state of pretrial discovery. The teaching of *Northwest Airlines* does not extend to situations where the employer counterclaims in a suit establishing liability between it and the plaintiff union. The Court will not permit the union, merely by bringing the employment discrimination action on behalf of its female members to insulate itself from liability for sex discrimination.

*Id.* at 4.

The court does not find the reasoning of *CSEA* persuasive. There is no danger of the union "insulating" itself from claims of employees for sex discrimination, by bringing an employment discrimination action on behalf of the employees. By merely taking the initiative in filing suit against the employer, the union is not immune to liability either in the same action or in a separate action for its own wrongdoing.[3] All the union is insulated from is a claim for contri-

bution by the defendant employer. According to the Supreme Court in *Northwest Airlines,* this is exactly the legislative scheme Congress enacted. If no claim can be asserted for contribution against unions in a separate action, *Northwest Airlines, supra,* and no claim for contribution may be asserted when the union is a defendant in the same action, *Anderson v. Local 3 IBEW,* 582 F.Supp. 627, 630–32 (S.D.N.Y. 1984), then there is no basis, either implicit in the statute or under federal common law, for fashioning a different rule when the union is a plaintiff.

Defendants' counterclaim based on indemnification is also dismissed. As the court stated in *Anderson, supra,* 582 F.Supp. at 633, "the rationale of [*Northwest Airlines*] would equally bar claims for indemnity."

■ Defendants alternatively contend that they have an independent cause of action against the unions based on Section 703(c) of Title VII, which provides:

> (c) ... it shall be an unlawful practice for a labor organization—
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e–2(c)(3).

Section 706(f)(1) of the Civil Rights Act, 42 U.S.C. § 2000e–5(f)(1), provides that the "aggrieved party" may bring a civil action "against the respondent named in the charge ...," after exhausting administrative remedies. There are two prerequisites to the filing of Title VII action in federal court: the timely filing of an administrative charge of discrimination with the EEOC and the filing of a complaint in the district court within ninety days from the receipt of the right-to-sue letter. *See* 42 U.S.C. §§ 2000e–5(e) and (f)(1). Defendants concede that they have failed to meet both requirements.

---

**3.** As noted *supra,* this action filed by the union plaintiffs is not the only action pending for redress of the defendants' alleged discrimination against the PCTs and SPCTs. *See supra,* note 2. What is noteworthy is that the plaintiffs in the two *Scotti* cases have not named the

unions as defendants. Nor did they file any charges with the EEOC against the unions. *See Northwest Airlines, supra,* 451 U.S. at 93 n. 28, 101 S.Ct. at 1581 n. 28 (court may not use its broad power to fashion relief against unions against whom no charges were filed).

Defendants contend that their failure to meet the jurisdictional prerequisites should be excused. They contend that the court should exercise ancillary jurisdiction over the employers' claim against the union because it arises out of the same set of circumstances as the plaintiffs' claims. *See Newton v. Kroger Co.,* 501 F.Supp. 177, 178 (E.D.Ark.1980).

▮ The general rule is that a party who has not been named in an EEOC charge or a right-to-sue letter may only be named as a defendant if the unnamed party had a substantial identity of interest with a party who was named as a respondent in the EEOC action, received notice of the charge and an opportunity to conciliate on that charge. *Women in City Government United v. City of New York,* 515 F.Supp. 295, 299 (S.D.N.Y.1981); *Schick v. Bronstein,* 447 F.Supp. 333, 336 (S.D.N.Y.1978). In this case, the union plaintiffs have no substantial identity of interest with the parties named in the EEOC charge, the city defendants. Moreover, the union plaintiffs were parties to the State Division proceedings only in their capacity as plaintiffs. They had no notice of the city defendants' proposed charge against them.[4] Any conciliation efforts occurring at the State Division involve only the defendants' liability to the plaintiff employees. The unions' liability either to the employees or to the defendants herein was not at issue. The fact that the unions participated in conciliation efforts vis-a-vis the employees' claims against the city defendants is not sufficient under the statute to allow this court to exercise jurisdiction over the city defendants' claim against the unions.

▮ Moreover, the defendants do not have standing to assert a claim under Section 703(c) of Title VII against the unions. Although, a union's role in ratifying a discriminatory practice could be enough to compel a finding of union liability, *Donnell v. General Motors Corp.,* 576 F.2d 1292, 1300 (8th Cir.1978), that claim can only be brought by the person "aggrieved by the alleged unlawful employment practice," 42 U.S.C. § 2000e–5(f)(1). Defendants' counterclaim alleges that the unions "... caused or attempted to cause defendants to discriminate against plaintiffs ...." If the union has in fact engaged in an unlawful employment practice, the only persons "aggrieved" under this allegation are the plaintiff-employees. An employer cannot be the victim of its own discriminatory employment practices. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 54, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974); *Jersey Central Power and Lighting Co. v. Local Unions 327, etc., of I.B.E.W.,* 508 F.2d 687, 698 n. 31 (3d Cir.1975), *vacated without opinion on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976), *on remand,* 542 F.2d 8 (3d Cir.1976). The statute's proscription of a union's causing or attempting to cause an employer to discriminate was enacted for the benefit of employees; the statute does not create a right of action in favor of the discriminating employer. *See Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057, 1060 (S.D.N.Y.1975).[5]

▮ Defendants further request that if the motion to dismiss is granted, the counterclaim should be dismissed without prejudice to allow them to file an administrative

---

**4.** Defendants still have not informed the court or the unions as to the exact nature of the unions' alleged misconduct. Defendants contend that they "must be given an opportunity to prove that the union violated § 703(c) through the discovery process." Defendants' Memorandum at Law at 5. This proposed fishing expedition into the lawfulness of the unions' conduct is precisely what Congress sought to prevent in enacting the jurisdictional prerequisites to a Title VII action.

**5.** In *Northwest Airlines, supra,* the Court stated in dicta that Section 703(c)(3) of Title VII "arguably [was] intended to provide special protection for employers, ..." *Northwest Airlines, supra,* 451 U.S. at 92–93, 101 S.Ct. at 1581. In this context, the Court stated that Section 703(c)(3) could not serve as a basis for inferring a right to contribution, even if "construed most favorably to petitioner [employer]." *Id.* at 93, 101 S.Ct. at 1581. The Court did not reach the issue of whether Section 703(c)(3) provides a cause of action to an employer found to have discriminated in violation of the statute.

charge with the EEOC. However, it is too late in the day for the court to grant such relief. EEOC charges were filed by the plaintiffs almost one year ago. Moreover, this is a class action involving the interests of over 600 class members, not just the unions and the city defendants. The case involves relatively complicated and uncharted areas of "comparable worth." These proceedings should not be delayed while the defendants file an EEOC charge and wait 180 days or more to receive a right-to-sue letter, particularly in view of the defendants' failure to articulate the nature of the unions' alleged unlawful conduct.

▆▆ Finally, the defendants request leave to amend their answer to assert a pendent State claim under Sections 296 and 297 of the New York State Executive Law. Under Fed.R.Civ.P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." In deciding whether to grant leave to amend an answer the court will consider the degree of fairness to the plaintiff in terms of time, money, and legal resources necessary to respond to the amended answer, availability of evidence, and the amount of time that has passed before the motion to amend has been made. *Brodvin v. Hertz Corp.*, 487 F.Supp. 1336, 1339 (S.D.N.Y.1980).

The unions contend that leave to amend should be denied for three reasons: (1) defendants lack standing to sue as "persons aggrieved" under Section 297(1) of the state Executive Law; (2) claims for contribution are limited under New York State law to ". . . personal injury, injury to property or wrongful death"; and (3) defendants' failure to articulate specifically what their claim would be under New York State law warrants the denial of pendent jurisdiction, in order to avoid "exploration [by a federal court] of uncharted areas of state law." 3A Moore's Federal Practice ¶ 18.07, at 18–63 to 18–64. Plaintiffs' Reply Memorandum at 4–5.

▆▆ Consideration of defendants' request for leave to amend the Answer at this stage in the litigation and based upon the record before the court is premature. Defendants have not submitted a proposed amended Answer. Moreover, the parties have not fully briefed the issue of the propriety of amendments to the Answer based on pendant state law claims. Accordingly, the counterclaim is dismissed without prejudice to defendants' right to move, pursuant to Fed.R.Civ.P. 15(a), for leave to amend their answer to assert pendant state law claims against the unions.[6]

### CONCLUSION

The unions' motion to dismiss the counterclaim is granted, without prejudice to the defendants' right to move for leave to amend their answer to assert pendant state law claims against the. unions. Counsel for the plaintiffs are ordered to prepare a proposed notice of this decision, which, if approved, will be sent to all class members in this action, and to file it with the court on or before January 21, 1984.

SO ORDERED.

---

6. Defendants are directed to read carefully Fed. R.Civ.P. 11 and to take note of the consequences for filing a frivolous motion.