**Lois TUMA and Irene Rucki, Plaintiffs,**

v.

**AMERICAN CAN COMPANY et al., Defendants.**

**Civ. A. No. 1421–70.**

United States District Court, D. New Jersey.

April 26, 1973.

Ruth Russell Gray, Plainfield, N. J., for plaintiffs.

Carpenter, Bennett & Morrissey, by Thomas L. Morrissey, Newark, N. J., for defendant American Can Co.

Rothbard, Harris & Oxfeld, by Abraham L. Friedman, Newark, N. J., William H. Schmelling, Pittsburgh, Pa., for defendants United Steelworkers of America, Local 6301 and International.

## OPINION

LACEY, District Judge.

Plaintiffs, female employees of American Can Company at Hillside, New Jersey, and members of the defendants United Steelworkers of America, International and United Steelworkers of America, Local Union 6301, charge in a nominal class action discrimination in employment based on sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970), and the Equal Pay Act of 1963, 29 U.S. C. § 206(d) (1970). Plaintiffs further allege a violation by defendant Unions of their duty of fair representation.

This matter comes before the Court by reason of defendant Unions' motion for summary judgment, cross motions for a determination on class action status, and plaintiffs' motion for certain evidentiary rulings.

Defendant Unions' motion for summary judgment is addressed, in three parts, to each of plaintiffs' claimed grounds for relief. It is contended that the Equal Pay Act claim should be dismissed as the statute fails to provide any legal basis for recovery against defendant Unions. The unfair representation claim is alleged to be barred by the applicable statute of limitations, and deficient as a matter of law based on the undisputed facts. The Title VII claims are attacked, (1) by defendant International Union on the ground that it was not made a party to the charges before the EEOC, a prerequisite to this action, and (2) by both the International and Local Unions, alleging the claim to be deficient as a matter of law based on the undisputed facts.

### Equal Pay Act Claims

■ Defendant Unions move for summary judgment on the Equal Pay Act claims, alleging that the Equal Pay Act of 1963, 29 U.S.C. § 206(d), affords no legal basis for either injunctive relief or monetary recovery against the defendant Unions in a private action brought by employees who are members of said Unions. Plaintiffs, in their brief opposing the motion, have chosen not to challenge this position. Review of the language and structure of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act of 1963, adding § 206(d), leads to the inescapable conclusion that the motion should be granted.

The applicable statutory structure is as follows: The statutorily proscribed conduct of employers and unions is embodied in § 206(d)(1) and (2). Section 215(a)(2) makes a violation of § 206 unlawful. Section 216 establishes penalties for violations of the Act. It provides for criminal penalties, in § 216(a), for willful violations by "any person." However, § 216(b), which allows maintenance of a civil action by employees for monetary damages, provides for such liability only on the part of "any employer." It does not provide for private actions by employees against a union.

■ This reading of the statute is supported by the Interpretive Bulletin of

the Wage-Hour Administration, codified in 29 C.F.R. § 800, which is entitled to considerable weight in this Court. Roland Electrical Co. v. Walling, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383 (1946); United States v. American Trucking Assns., Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). *See also* Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The Administrator's regulations provide for enforcement of the Act against labor organizations by either injunction proceedings instituted by the Secretary of Labor under § 217, or by criminal prosecutions for willful violations under § 216(a). No provision is made for private damage suits against unions. 29 C.F.R. § 800.166. The only court to consider this question has concluded, similarly, that civil liability on the part of a union is unavailable in private actions under the Act. Wirtz v. Hayes Industries, Inc., 58 CCH Lab. Cas. ¶ 32,085 (N.D.Ohio 1968).

In dismissing these claims, this Court is not ruling on a district court's equitable power to assess damages against a union in injunction proceedings instituted by the Secretary of Labor under § 217. *See* Hodgson v. Sagner, Inc., 326 F.Supp. 371 (D.Md.1971), aff'd sub nom., Hodgson v. Baltimore Regional Joint Board, 462 F.2d 180 (4th Cir. 1972).

Accordingly, the Equal Pay Act claims against the defendant Unions are dismissed.

### *Duty of Fair Representation*

■ Defendant Unions next claim that the plaintiffs have failed to properly plead, with sufficient specificity, their claims of the Unions' breach of the duty of fair representation. Defendant Unions also argue these claims are barred by the applicable statute of limitations.

The allegations of the complaint, accepting them as true, which I must on this motion, contain sufficient specificity to set forth the required hostile discrimination by plaintiffs' statutory representatives to allow the requisite showing to be made under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and within this Circuit, Bazarte v. United Transportation Union, 429 F. 2d 868 (3d Cir. 1970). Plaintiffs allege that defendant Unions joined in, and failed to protect the female members from, the employer's discriminatory practices, in breach of their duty of fair representation. They thus charge the Unions with bargaining for and establishing a promotional system, with the intention of continuing and preserving sexual discrimination.

As the Supreme Court has said in Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), " 'where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation,' complaints should be construed to avoid dismissals . . . ." 397 U.S. at 27, 90 S.Ct. at 772. I cannot conclude that it appears beyond doubt that plaintiffs can prove no set of facts to entitle them to relief under their complaint. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Moreover, since this matter is before me on defendant Unions' motions for summary judgment, I am not limited to the allegations in plaintiffs' complaint. Balowski v. UAW, 372 F.2d 829, 835 (6th Cir. 1967).

■ The affidavits submitted on the motion reveal that there are genuine issues of material fact concerning whether the Unions breached the fair representation duty by failing to process plaintiffs' grievances in good faith and without discrimination. Plaintiffs' affidavits claim that Union representatives considered the jobs sought by plaintiffs to be male jobs, did not want plaintiffs to obtain such jobs, and accordingly failed to process grievances properly. There is an allegation that grievances were handled by the Union "just so far to keep the women quiet . . . ." (affidavit of Claude Watt). There are allegations of Union agents interfering with griev-

ance filing by women by failing to supply proper paper (affidavit of Lois Tuma). There are even allegations of interfering with the plaintiffs' charges before the NLRB.[1] Under these circumstances, genuine issues of material fact are presented and plaintiffs are entitled to prove their allegations.

### Statute of Limitations

Defendant Unions argue that the limitations period that should be applied to the unfair representation claim against the Unions should be a six-month federal limitations period comparable to the statutory period governing unfair labor practices under Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). In the alternative, it is argued that if the Court instead chooses to look to state law for a limitations period, the Court should choose the two-year period applicable to actions in tort for personal injuries, rather than the six-year period applicable to contract actions.

■ Defendants' argument for a six-month federal limitation period is unconvincing. Congress has not fashioned a limitations period to be applied to suits for breach of a union's duty of fair representation; therefore this Court must look to state law to determine the appropriate limitation period. UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *and see* Page v. Curtiss-Wright Corp., 332 F.Supp. 1060, 1064 n. 7 (D.N.J.1971). *See also* Abrams v. Carrier Corp., 434 F.2d 1234, 1251 (2d Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); DeArroyo v. Sindicato DeTrabajadores Packinghouse, 425 F.2d 281, 285, 287 (1st Cir.), cert. denied, Puerto Rico Tel. Co. v. Fiqueroa DeArroyo, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970); Gray v. International Association of Heat & Frost Insulators & Asbestos Workers, Local 51, 416 F.2d 313, 316 (6th Cir. 1969); Falsetti v. Local 2026, United Mine Workers, 249 F.Supp. 970 (W.D.Pa.1965), aff'd, 355 F.2d 658 (3d Cir. 1966); Jamison v. Olga Coal Co., 335 F.Supp. 454, 462 (S.D.W.Va.1971); Williams v. Dana Corp., 54 F.R.D. 473 (E.D.Mich.1971). Defendants' reliance upon certain language in the Third Circuit affirmance in *Falsetti, supra,* to the effect that it might be desirable to have a six-month uniform federal limitation period is misplaced. The Third Circuit specifically recognized that that question was then pending before the Supreme Court in Hoosier Cardinal Corp., Falsetti, *supra,* 355 F.2d at 662 n. 14, which was decided to the contrary, shortly thereafter.

However, the determinations by various courts of how to classify the unfair representation claim in order to determine what particular state statute of limitations to apply have been anything but uniform. In *Falsetti*, the Third Circuit held that although the district court had ruled that the claim there had been barred by the Pennsylvania six-year limitations period for contract actions, regardless of which limitation period applied, the Court of Appeals could not imagine the period being greater than six years, and therefore affirmed without ever characterizing the duty of fair representation claim.

In Abrams v. Carrier Corp., *supra,* and DeArroyo v. Sindicato De-Trabajadores Packinghouse, *supra,* plaintiffs combined an unfair representation claim against a Union with a related § 301 action against the employer based on alleged violations of an employee's rights under a collective bar-

---

[1]. "All of them [named union representatives] speak of the charges that Mrs. Tuma and I filed with the National Labor Relations Board after our jobs were eliminated in September of 1967. After I filed the charge with the NLRB, I was told by the union, particularly Joe Vicinio, who said that he and Steve Cadena and Jimmy Ryan had gone to talk to the man at the NLRB.

Joe kept telling me I had no grievance and that we women would never get to be general inspectors. He said I had no case and he said I was supposed to go to the NLRB and sign something to withdraw the charge. These men kept telling me that women would never get general inspectors' jobs. (Affidavit of Irene Rucki).

gaining agreement. In *DeArroyo, supra,* 425 F.2d at 287, the First Circuit held that the six-year contract limitations period applicable to the § 301 action did not have to be applied to the claim against the Union, characterizing the duty of fair representation as approximating the duty of due care applicable in tort. *See also* Tippett v. Liggett & Myers Tobacco Co., 316 F.Supp. 292, 297–298 (M.D.N.C.1970). The *De-Arroyo* court did not further particularize the nature of the tort, that is, as an injury to the person, an injury to a property right of the person, or any other type of tortious injury. Although such a further classification was apparently not necessary to apply Puerto Rico law, such a distinction is crucial in applying New Jersey law.

In *Abrams* the Second Circuit held that a uniform limitations period was indicated, and applied the contract period of the § 301 claim to the unfair representation claim as well. 434 F.2d at 1252–1253. *Cf.* Deboles v. Trans World Airlines, Inc., 350 F.Supp. 1274, 1290–1291 (E.D.Pa.1972). The court further held it would not apply the contract limitations period to all unfair representation suits, but limited its holding to those suits where the allegations were based on the Union refusal to enforce employee contract rights, presented along with § 301 actions against an employer. The court freed itself to choose, in future actions, a tort characterization, a "statutory duty" characterization, or any other type of characterization. 434 F.2d at 1252 n. 15.

In one sense both *Abrams* and *De-Arroyo* are distinguishable from the instant case, as this Court is not presented with a § 301 claim against the employer. The claims presented refer, in part, to discrimination at the bargaining stage, and charge the employer and Union with advancing sex discrimination by the collective bargaining agreement itself. That a § 301 claim is not presented herein withdraws this case from the purview of *Abrams*. However, since *DeArroyo* applied a per se tort classification to all unfair representation suits, its ruling could be considered applicable to this case. In addition, the lack of a § 301 charge against the employer makes the *Abrams* "need for uniformity" yardstick not applicable.

It is noted that the courts have not limited their characterization of an unfair representation claim to being either contractual or tortious. In Jamison v. Olga Coal Co., *supra,* 335 F.Supp. at 462–463, the court concluded that neither of these two characterizations applied, and that the duty was a statutory duty more resembling that arising from a fiduciary relationship; however, the court then held that this fiduciary duty was of a kind that was analogous to a duty, the breach of which would give rise to a personal injury or property damage claim, and then applied that statute of limitations pertinent to such a claim. Again, it is to be noted that, although simply classifying a claim as one for personal injury or property damage was sufficient to apply the pertinent West Virginia statute of limitations, such a classification would lead to different results under New Jersey law.

Other courts have found additional bases for classification. In Cray v. International Association of Heat & Frost Insulators & Asbestos Workers, Local 51, *supra,* 416 F.2d at 316, the court applied a state statute of limitations applicable to claims of a breach of a statutory duty. In Richardson v. Communications Workers of America, 443 F.2d 974, 981 (8th Cir. 1971), the court apparently did not have to make a definitive choice of classification, as it concluded that whether the claim was described as one in tort or as a breach of trust, it did not rest on contract principles.

Consequently, in applying the varied characterizations of the duty of fair representation to the instant action, this Court finds that, due to the structure of the New Jersey statute of limitations provisions, N.J.S.A. 2A:14–1 et seq., it is not necessary for it to classify precisely the nature of this action. It is only necessary to determine which

should be applied, the two-year statute of limitations of N.J.S.A. 2A:14–2, pertaining to actions "for an injury to the person caused by the wrongful act, neglect or default of any person . . . ", or the six-year limitations period contained in N.J.S.A. 2A:14–1 pertaining, in pertinent part, to actions

> for any tortious injury to real or personal property, for taking, detaining, or converting personal property . . . for any tortious injury to the rights of another not stated in sections 2A:14–2 [quoted above] and 2A:14–3 [pertaining to libel or slander] of this title, or for recovery upon a contractual claim or liability, express or implied . . . .

This Court chooses to apply the latter six-year limitations period.

If this Court were to characterize the unfair representation claim as a claim in tort, it would not consider it in the nature of the classical "injury to the person caused by wrongful act," but rather, more appropriately, a "tortious injury to the rights of another" not included within the above classical personal injury concept. Moreover, it is clear that if the Court considered the claim in the nature of a contract action, see Abrams, supra, or in the nature of a claim of tortious injury to personal property right, see Jamison, supra, the six-year period would also apply. This limitations period has been selected in the past in this district, although by way of dictum. Bruen v. Local 492, International Union of Electrical Radio and Machine Workers, 313 F.Supp. 387, 389–390 (D.N.J. 1969), aff'd per curiam, 425 F.2d 190 (3d Cir. 1970).

In applying this six-year limitations period, this Court is cognizant of the DeArroyo court's interpretation of Hoosier Cardinal Corp., as indicating "a distinct preference for the shorter statute of limitations where the question of characterization is a close one and no manifest injustice results from such choice . . . ." 425 F.2d at 287.

However, I do not construe the First Circuit language or that of the Supreme Court as requiring the application of the shorter statute of limitations, when a court determines that the longer period is more appropriate. Indeed, the Supreme Court in Hoosier Cardinal Corp. specifically recognized that certain actions may "only be characterized fairly" to require the application of what may be the longer period of limitations. 383 U.S. at 707, 86 S.Ct. 1107.

Thus, applying the six-year period of limitations, it is clear that the plaintiffs' claim for a breach of the Unions' duty of fair representation is not time-barred. I therefore do not reach the question of whether there is any tolling of the limitations period applicable to the unfair representation claim by plaintiffs' seeking relief before (1) the NLRB, and (2) the EEOC.

### Title VII Claims

Defendant International Union contends that this Court does not have subject matter jurisdiction over it for the claimed violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., in that the plaintiffs have failed to charge it before the EEOC as required as a prerequisite to suit in the district court. It appears that the September 1967 charge before the EEOC charged only the Company and the Local Union, precluding the instant claim against the International Union. Defendant Unions further argue that, as suming jurisdiction, the undisputed facts fail to support a claim for relief under Title VII, thereby entitling them to summary judgment.

Courts have uniformly held that the language in the Act permitting civil actions to be brought in district court against the "respondent named in the charge"[2] requires aggrieved parties to first charge those parties they believe to be guilty of discriminatory acts in a complaint before the EEOC. Richardson v. Miller, 446 F.2d 1247 (3d Cir.

---

2. 42 U.S.C. § 2000e–5(e) (1970), as amended 42 U.S.C.A. § 2000e–5(f)(1) (Supp. 1973).

1971); Beverly v. Lone Star Lead Constr. Corp., 437 F.2d 1136, 1139 (5th Cir. 1971).

This requirement allows the EEOC an opportunity to investigate charges and to attempt to conciliate disputes in the hopes of achieving voluntary settlement prior to the "extreme measure of bringing a civil action in the congested federal courts." Mickel v. South Carolina State Employment Service, 377 F.2d 239, 241 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967). Thus charging only the Local Union with discrimination before the EEOC makes the International Union an improper defendant in a later district court action charging both the Local and International Unions with violations of Title VII. Jamison v. Olga Coal Co., *supra*, 335 F.2d at 460–461.

Although discovery has been completed in this action, there has been no argument made, or facts presented to prove, that the Local Union was acting as agent for the International, thereby permitting the instant action against principal and agent based on the charge before the EEOC against the agent. *See* Tippett v. Liggett & Myers Tobacco Co., *supra*, 316 F.Supp. at 296. Nevertheless, even if this agency relationship were to be alleged, it is questionable whether the Title VII claim could be maintained against the International Union without frustrating the Congressional objective of allowing the EEOC an opportunity to achieve voluntary settlement through conciliation efforts. *See* Jamison v. Olga Coal Co., *supra*, 335 F.Supp. at 460. In any event, this argument is not before the Court, and it does not otherwise appear that the International Union is an indispensable party to the Title VII claim calling for joinder under Fed.R.Civ.P. 19. *Compare* Reyes v. Missouri-Kansas-Texas R. R. Co., 53 F.R.D. 293 (D.Kan.1971) (court permitted joinder of Local Union as necessary party under Rule 19 when only company was sued); Bremer v. St. Louis Southwestern Railroad Co., 310 F.Supp. 1333 (E.D.Mo.1969); *see also* Torockio v.

Chamberlain Mfg. Co., 51 F.R.D. 517 (W.D.Pa.1970) (court permitted joinder of International Union on motion of defendant company since company could not charge union before the EEOC).

It is plaintiffs' position, however, that they properly charged the International Union before the EEOC in amended charges dated September 16, 1971. Affidavits have been submitted to this effect by the two named plaintiffs, along with copies of the charges filed on that date. Plaintiffs' brief (at p. 35) states that the 1971 charges were filed "for the purpose of curing the jurisdictional defect for failing to name the international [*sic*]." Indeed, an examination of the pleadings supports plaintiffs' concession that the only purpose such amended charges were intended to serve was to permit the instant action, which had already been commenced, to proceed against the International Union, and not to afford the EEOC an opportunity to attempt conciliation with the International. The EEOC had already completed its investigation on the original 1967 charges and issued its decision on March 28, 1969. By September 25, 1970 the Commission had determined it was unable to achieve voluntary compliance with Title VII and so notified plaintiffs, entitling them to sue in district court within 30 days of receipt of said notice. The instant action was filed on October 21, 1970. It was only after the defendant Unions raised plaintiffs' failure to properly charge the International Union in its answer of December 17, 1970, that the plaintiff filed their amended charges before the EEOC on September 16, 1971. It is noted that it took plaintiffs nine months from the time their "jurisdictional defect" became known to them before they attempted to "cure" the defect. In response to an inquiry from the Court concerning the status of the 1971 charges before the EEOC, plaintiffs, by letter from counsel of March 1, 1973, have advised the Court that it is the policy of the EEOC to hold in abeyance all work on cases in litigation, and that this

policy was being followed with respect to the 1971 amended charges.

Plaintiffs' belated attempt to cure their initial failure to properly charge the International Union before the EEOC must fail. It is apparent that plaintiffs have not received notice from the Commission, under 42 U.S.C. § 2000e–5(e)(1970), as amended 42 U.S. C.A. § 2000e–5(f)(1) (Supp.1973), that it has been unable to obtain voluntary compliance with respect to the 1971 charge, nor have plaintiffs demanded such notice although in a position to do so. Since receiving this notice is a prerequisite to suit, joinder now is, in one sense, premature. Cox v. United States Gypsum Co., 284 F.Supp. 74, 83 (N.D. Ind.1968), aff'd as modified, 409 F.2d 289, 291 (7th Cir. 1969).

▪ Moreover, although the above defect can be cured by a demand for such notice from the EEOC, plaintiffs' 1971 charges are barred by the 90-day statute of limitations. Prior to the 1972 amendments to Title VII, Section 706(d) of the Act, 42 U.S.C. § 2000e– 5(d)(1970), required that charges be filed before the EEOC within 90 days of the alleged unlawful employment practice. Courts have consistently held this 90-day filing requirement to be a jurisdictional prerequisite to a subsequent court action under Title VII. Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 896 (D.Me.1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969). However, if the alleged violation is deemed to be "continuing," then the 90-day provision will not bar suit unless the charges are filed after 90 days from the cessation of the violation. *Sciaraffa, supra*; Cox v. United States Gypsum Co., 409 F.2d 289 (7th Cir. 1969); Tippett v. Liggett & Myers Tobacco Co., *supra*, 316 F.Supp. at 295–296.

▪ The language of the 1971 charges before the EEOC present a situation similar to that in *Cox*. The plaintiffs charge a single event; a cutback from the job of Assistant Inspector occurring on September 11, and 12, 1967, respectively for plaintiffs Rucki and Tuma. A cutback, like the layoffs in *Cox* and *Sciaraffa*, without more, is not a continuing event, but completed at the time it occurs. However, like the court in *Cox*, this Court is faced with a charge which, in addition to only alleging a single event, designates the violation to be continuous. The *Cox* court found, based on five factors, including the fact that the claim was filed by a layman, that the continuous designation was sufficient to allege a continuous violation and satisfy the 90-day requirement. If the 1971 complaints before the EEOC were all that were before me on this motion for summary judgment, I might well consider such charges, drafted by laymen, as alleging a continuous violation.[3]

However, I also must consider the affidavits submitted which reveal that well before the September 1971 charges were filed, plaintiffs Tuma and Rucki had attained their desired General Inspector positions.[4] In view of this fact, these charges cannot be considered continuing on September 16, 1971, and therefore will be barred by the 90-day filing provision.

▪ Moreover, the relation-back provisions of Fed.R.Civ.P. 15(c) are not available to plaintiffs. The mistake of failing to sue the International was not of the nature of a misnomer or misdescription of a defendant. *Compare* Washington v. T. G. & Y. Stores Co., 324 F.Supp. 849 (W.D.La.1971). Although in certain instances Rule 15(c) permits the joinder of additional parties,

3. It should be noted, however, that one of the justifying reasons for the result in *Cox* was reliance by the court on the fact that the EEOC chose to accept the charges as timely. 409 F.2d at 291. Since the Commission has not acted on the instant claims the same cannot be said for the matter *sub judice*.

4. Affidavit of James Ryan of December 24, 1972, at 3: "both Mrs. Ruma and Mrs. Rucki . . . have been General Inspectors now for more than two years." This fact allegation is uncontested by plaintiffs.

plaintiffs do not claim identity of interest between the Local and International Unions, nor have they made any showing that the delay in filing the 1971 charges was not due to inexcusable neglect. *See generally* 3 J. Moore, Federal Practice, ¶ 15.15 [4.–2] (1968).

■ Furthermore, in dismissing the Title VII claim against the International Union, I cannot see how plaintiffs will be prejudiced. As previously mentioned, the International does not now appear to be indispensible to this action in that complete relief cannot be accorded in its absence. Fed.R.Civ.P. 19(a). In any event, if it later becomes necessary to add the International to execute a decree of the Court, this Court has the authority to do so. United States v. Chesapeake & Ohio Railway Co., 471 F. 2d 582, 592–593 (4th Cir. 1972).

■ With respect to the Local Union's motion for summary judgment, suffice it to say that the cross affidavits put material issues of fact in dispute. To contest the claim that the Unions discriminated against plaintiffs in the 1967 "cut back" of Assistant Inspectors, defendant Unions quote from the EEOC report where the Commission found that plaintiffs refused jobs on the second shift, and concluded that there was no evidence of discrimination on this charge. However, the Commission is not the final arbiter of plaintiffs' grievances; that function lies solely with this Court. Fekete v. United States Steel Corp., 424 F.2d 331, 336 (3d Cir. 1970).[5] Plaintiffs contest this finding in their affidavits and are entitled to have a fact determination made by the Court. Similarly, plaintiffs' affidavits sufficiently contest the facts surrounding their discrimination claims relating to their achievement of the general inspector position to withstand summary judgment.

Accordingly, the summary judgment motions concerning the Title VII claims will be granted as to defendant International Union and denied as to defendant Local Union.

*Class Action Determination*

In addition to defendant Unions' motions for summary judgment I am presented with cross motions for a determination on class action status. I have heard oral argument on this question and denied the application to designate this action as a class action. My reasons for denying class action treatment in Page v. Curtiss-Wright Corp., 332 F.Supp. 1060 (D.N.J.1971), similarly apply to the instant action. Plaintiffs do not satisfy the first prerequisite to a class action contained in Fed.R.Civ.P. 23(a)(1) ("the class is so numerous that joinder of all members is impracticable").

■ The burden of showing that joinder is impracticable is on the party instituting the action. Cash v. Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970); DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Kinzler v. New York Stock Exchange, 53 F.R.D. 75, 77 (S.D. N.Y.1971). The complaint of course alleges this requirement to be satisfied, but a mere allegation is insufficient to satisfy this burden. Page v. Curtiss-Wright Corp., *supra,* 332 F.Supp. at 1071; Cash v. Swifton Land Corp., *supra*. This action is presently over two years old. Discovery has been completed and the case is ready for trial. The only indication I have received regarding the size of the class was through plaintiffs' counsel at oral argument. Counsel indicated that although there were 185 women in the plant, she did not know how many of them were affected by the charged pattern of discrimination. Speculation as to the number of parties, however, is not sufficient to satisfy the requirements of Rule 23(a)(1). DeMarco v. Edens, *supra*; Sims v. Parke Davis & Co., 334 F.Supp. 774, 781 (E.D.Mich.), aff'd per curiam, 453 F.2d 1259 (6th Cir. 1971), cert. denied, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); Cannon v. Texas Gulf Sulphur Co., 53 F.R.D. 216, 219

---

5. *See also* Jurinko v. Edwin L. Wiegand Co., 477 F.2d 1038, at 1040 n. 3 (3d Cir. 1973).

(S.D.N.Y.1971); Kinzler v. New York Stock Exchange, *supra,* 53 F.R.D. at 77–78.

■ Additionally, counsel for plaintiffs indicated that there were 12 women who presently hold the so-called "male jobs" and that these women would be affected by the charged discriminatory pattern. Although plaintiffs assert this 12-member class, there are no materials before me to support this assertion. *See* Sims v. Parke Davis & Co., *supra.* Plaintiffs have not supplied the Court with even a single name of a member claimed to be within this class. Furthermore, although the case is ready for trial, the Court has not received any indication of interest on behalf of these alleged parties in joining the instant action. *See* Page v. Curtiss-Wright, *supra;* Giordano v. Radio Corporation of America, 183 F.2d 558, 561 (3d Cir. 1950).

Moreover, even if the requisite support were obtained for specifying the 12 persons as the appropriate size of the class, there is nothing to indicate that joinder of these persons would be impracticable. I recognize that mere numbers should not be used as a rigid guideline for determining the practicability of joinder, and make my determination based on all of the circumstances of this action, including the fact that the group of 12, as present employees of defendant Company, apparently reside in the same geographical area as the plaintiffs, and the locality wherein this district court sits. DeMarco v. Edens, *supra;* Giordano v. Radio Corp. of America, *supra.*

Thus, I find that plaintiffs have failed to show that the class is so numerous that joinder is impracticable. Accordingly, I have denied class action treatment, but will do so on a conditional basis, as permitted by Fed.R.Civ.P. 23(c)(1). *See* Page v. Curtiss-Wright Corp., *supra.*

### Evidentiary Matters

■ Plaintiffs request rulings on certain evidentiary matters before trial. First, plaintiffs desire to offer into evidence at trial the EEOC decision and final investigative report arising out of the 1967 charges. Defendants point out to the Court that there exists an additional EEOC report arising out of the 1968 charges, not favorable to plaintiffs, but also related to this action. It is noted that the Circuits are not in accord on the question of whether the admission of these reports is mandated, Smith v. Universal Services, Inc., 454 F.2d 154, 156–158 (5th Cir. 1972), or within the sound discretion of the trial court. Moss v. Lane Co., Inc., 471 F.2d 853, 856 (4th Cir. 1973); Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15 (4th Cir. 1972); Heard v. Mueller Co., 464 F.2d 190, 194 (6th Cir. 1972); *see also* Gillin v. Federal Paper Board Co., 52 F.R.D. 383, 384–385 (D.Conn.1970). Regardless of whether such admission is discretionary or mandatory, it is clearly within my authority to admit these reports, and I so rule. However, in the interest of fairness I will only admit these reports if all relevant reports are offered.

Plaintiffs also request a ruling on the admissibility of interrogatories completed during discovery. In view of the failure of the parties to arrive at agreement as to the procedure to be followed as to objections to specific interrogatories, I will reserve ruling on this matter until this evidence is offered at trial.

Submit an appropriate order.