EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,
v.
FERRIS STATE COLLEGE, Defendant
and Third-Party Plaintiff,
v.
AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOY-
EES, AFL–CIO, LOCAL UNION 1609
and Michigan State Employees Union,
Council 7, Third-Party Defendants.

No. G75–302 CA1.

United States District Court,

W. D. Michigan, S. D.

April 29, 1980.

J. Kenneth L. Morse and Deborah L. Gordon, Equal Employment Opportunity Comm., Detroit, Mich., for plaintiff.

Gordon J. Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for defendant and third-party plaintiff.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

### THE CASE

The Secretary of Labor initiated a civil suit in July, 1975, against Ferris State Col-

lege for violations of the Equal Pay Act amendments to the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*). The complaint charges that Ferris State impermissibly underpaid its female maintenance employees for work which was substantially similar to that performed by male maintenance employees.

Ferris State College subsequently moved for dismissal of the complaint based upon *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), where the Supreme Court struck down as unconstitutional extension to state employees of the minimum wage and overtime provisions of the Fair Labor Standards Act.

In addition, Ferris State filed a third-party complaint seeking contribution from Local 1609 of the American Federation of State, County & Municipal Employees and Council 7 of the Michigan State Employees Union (hereinafter "unions") for any liability it may incur as a result of the unions' joint involvement in the purportedly illegal wage scheme. The unions have moved to dismiss the third-party complaint alleging that no authority exists under the Equal Pay Act for damage actions against labor organizations. They additionally contend that Ferris State College has failed to state a claim upon which relief can be granted.

Due to a recent reassignment of the case, both motions are currently before me. For the reasons set out below, I deny defendant college's motion to dismiss, and grant the unions' motion dismissing the third-party complaint.

## THE FACTS

Ferris State College is a state supported institution of higher learning in the Michigan educational system. The State of Michigan is the primary source of its income, although tuition provides additional revenue. The college first began to employ female maintenance personnel (hereinafter "housekeepers") in 1955. Male maintenance personnel (hereinafter "custodians") were initially hired in 1961.

Employees at Ferris State College were not represented by a labor organization until 1966. Prior to that year, the narrowest wage differential between maintenance personnel was in 1961 when housekeepers received 59 cents per hour less than did custodians. This disparity rose to 67 cents per hour in 1965,[1] the fiscal year preceding approval of the college's first collective bargaining agreement.

Following the initiation of union representation, these wage differentials dropped to 28 cents per hour. Under subsequent employment contracts, however, these inequalities progressively increased. By 1972, custodians were receiving 40 cents per hour more than were housekeepers.

The events surrounding the 1972 and 1974 employment contract negotiations between the unions and the college form the basis of this litigation. Ferris State College alleges that the 42 cents per hour wage differential adopted in the 1972 contract originated out of the unions' initial wage demands. The defendant college avers that although wage equalization was discussed during the 1972 negotiation session, the unions and college together concluded that housekeepers' and custodians' jobs were not substantially similar. For that reason, the defendant college contends, the unions were the "cause" of whatever discrimination may have existed. Moreover, it is asserted, in 1972 Ferris State in fact offered to narrow the disparity between custodians and housekeepers by 5 cents per hour. The unions allegedly rejected this offer.

To the contrary, the unions contend that they did in fact propose wage equalization during the 1972 negotiations. They assert that in order to equalize wages, they were willing to accept an increase of 5 cents per hour less than what they otherwise would

---

1. Ferris State actually maintained a maintenance system in which there were two types of custodians. "A" custodians were paid close to 40 cents per hour more than were "B" custodians. The wage differentials between custodians and housekeepers listed here cover only the salaries of "B" custodians. For this reason, the differentials between housekeepers and custodians, on an average, are greater.

have accepted. They allege, however, that Ferris State College was adamant about retaining the differential in maintenance employees' wages, and contend that a strike over the issue was at that time inadvisable.

In 1974, the unions and college again discussed the question of discriminatory wages. The unions' wage proposal contained a combined job classification for both housekeepers and custodians which was designed to erase the controversial disparity. It is alleged that Ferris State strongly opposed this offer and instead presented its own proposal containing a 44 cents per hour differential. The college, however, contends that in fact this one-classification system was never seriously discussed.

For various reasons, negotiations broke off. In December of 1974, while the college's employees were between employment contracts, Ferris State unilaterally equalized wages in order to limit its potential liability.

Prior to the 1972 employment contract, Ferris State was investigated by the Department of Labor (hereinafter "DOL"), and was informed that the college's wage scheme was discriminatory. On March 30, 1972, James L. Stokes a Grand Rapids attorney who represented Ferris State College in its 1972 and 1974 negotiations with the unions, wrote to the DOL to advise that the college would be in compliance with the Equal Pay Act by July 1, 1972. In fact, Ferris State did not then equalize wages. Instead, on April 11, 1973, G. A. Hartford, Jr., the vice-president of business operations for the college, informed the DOL that in the college's opinion, housekeepers' and custodians' jobs were not substantially alike. A letter by Stokes to the DOL in August, 1973, offered to resolve the dispute via an immediate pay increase for all housekeepers. The college nevertheless maintained its 42 cents per hour disparity.

Following Ferris State College's unilateral equalization of wages in late 1974, Stokes again proposed settlement. In a letter to the DOL, the college sought to limit its liability by maintaining that the unions were jointly responsible for the alleged discrimination because they were signatories to the employment contract. For this reason, the college subsequently rejected the DOL's settlement proposal covering most of the housekeepers' back pay.

The Secretary of Labor brought suit against Ferris State College on July 14, 1975, for violations of the 1963 Equal Pay Act amendments to the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) (hereinafter "FLSA"). Specifically, the Secretary charged that Ferris State College, by maintaining a wage differential between custodians and housekeepers, violated § 6(d)(1) of the FLSA by discriminating between employees on the basis of sex for work which required substantially equal skill, effort and responsibility. Section 6(d)(1) reads, in part, as follows:

"(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

Jurisdiction for the DOL's suit was maintained under Section 17 of the FLSA, which empowers federal district courts to enjoin violations of the Act. The Secretary has requested a permanent injunction restraining Ferris State from withholding from housekeepers the payment of "unpaid minimum wages and overtime compensation",[2] found by the court to be owing.

---

**2.** Section 17 of the Fair Labor Standards Act reads in part as follows:

"The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section (206) of this title, including . . . the restraint of any withholding of payment of minimum wages or overtime

The defendant college maintains that the FLSA cannot be enforced against state run institutions. Consequently, it has moved to dismiss this action for lack of jurisdiction. The college additionally filed a third-party complaint against AFSCME and the Michigan State Employees Union. It seeks contribution for any liability it may incur due to the unions' involvement in the allegedly discriminatory wage scheme. These third-party defendants have since moved to dismiss that complaint, charging that the college lacks authority under the Equal Pay Act to maintain a damage action against a labor organization.

On August 30, 1979, the court ordered a substitution of the Equal Employment Opportunity Commission (EEOC) as the plaintiff herein, pursuant to Rule 25(c) of the Federal Rules of Civil Procedure and Reorganization Plan Number 1 of 1978, 92 Stat. 3781. The case was subsequently reassigned to me, and I now consider the parties' motions for dismissal.

## DISCUSSION

### I.

### FERRIS STATE COLLEGE'S MOTION TO DISMISS

In *National League of Cities v. Usery*, *supra*, the United States Supreme Court struck down the 1974 amendments to the FLSA,[3] which extended the statutory minimum wage and overtime provisions of that Act to employees of states and their political subdivisions. The majority ruled that the Tenth Amendment to the United States Constitution,[4] which reserves to the states those powers not expressly delegated to the Federal Government, acts to limit the exercise of Congressional power under the Commerce Clause.[5] Where a Congressional enactment is passed pursuant to Congress' Commerce Clause authority, the Court decided, and where that Congressional enactment acts to impair the states' ability to effectively function in a federal system, the statute violates the Tenth Amendment. Because the overtime and minimum wage provisions of the FLSA forced directly on the states how essential decisions regarding the conduct of integral government functions are to be made, these provisions were said to impair the states' ability to function in a federal system. For that reason, the Court held unconstitutional the 1974 amendments extending those provisions to the states.

Ferris State College has moved for dismissal of the present action based upon this holding. Specifically, the college argues that extension of the minimum wage and overtime provisions of the Fair Labor Standards Act were not the only sections of the 1974 amendments which were declared unconstitutional. Instead, the defendant contends, all of the 1974 amendments were stricken, including those sections extending to state employees application of the Equal Pay Act.

Ferris State argues that the Equal Pay Act, enacted in 1963, was an act of Congress arising out of a Congressional finding that sex-based wage differentials have a substantial adverse impact on interstate commerce. This contention arguably finds support in Section 2 of the Equal Pay Act, which states in part that "(i)t is declared to be the policy of this Chapter, through exercise by Congress of its power to regulate commerce . . . to correct (these) conditions . . . ." Because Congress expressly determined that the Equal Pay Act exists as an exercise of its Commerce Clause authority, argues the defendant college, and because the Supreme Court has

---

compensation found by the court to be due employees under this chapter . . . ."

**3.** Fair Labor Standards Act Amendments of 1974, Pub.L.No. 93–259, § 6(a)(5), 88 Stat. 59 (1974).

**4.** "The powers not delegated to the United States by the Constitution, nor provided by it to the States, are reserved to the States respectively, or to the people."

**5.** The Commerce Clause is found in Art. 1, § 8 of the Constitution: "Section. 8. The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;"

held that Congress' Commerce Clause power is restricted by the Tenth Amendment to the United States Constitution, the Equal Pay Act is said to be inapplicable against state-run institutions. Consequently, Ferris State College avers that this court is without jurisdiction or authority to hear the plaintiff's claim.

The Sixth Circuit has already ruled on the constitutionality of the 1974 Fair Labor Standards Act amendments extending Equal Pay Act protection to employees of states and their political subdivisions. *See, Marshall v. Owensboro-Daviess County Hospital,* 581 F.2d 116 (6th Cir. 1978). In that case, a unanimous panel upheld the amendments by concluding that the Equal Pay Act arose as an act of Congress authorized by § 5 of the Fourteenth Amendment, which empowers Congress to pass legislation designed to restrain states from denying to their citizens equal protection of the law.

Although Congress itself viewed the Equal Pay Act as a congressional exercise originating out of its Commerce power, the court determined that such pronouncements were not binding. Instead, a federal court should look to the actual powers of the national government when determining the constitutionality of Congressional acts. As the court said at page 120:

"The absence of any express reference to the Fourteenth Amendment in the 1974 amendments is of no consequence. It was not necessary for Congress to expressly rely on § 5 in exercising its power because such power clearly existed. We agree with the Third Circuit that '[i]n exercising the power of judicial review, as distinguished from the duty of statutory interpretation, we are concerned with the actual powers of the national government.' [Usery v.] Allegheny County Ins. Dist., supra [3 Cir.], 544 F.2d [148] at 155."

■ In contrast to its power over commerce, Congress' enforcement power under the Fourteenth Amendment is not limited by the Tenth Amendment. *See, Ex Parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1879).

*Accord, Marshall v. City of Sheboygan,* 577 F.2d 1 (7th Cir. 1978). The Sixth Circuit concluded that because the Equal Pay Act is in fact legislation enacted pursuant to the Fourteenth Amendment, as opposed to the Commerce Clause, *National League of Cities, supra,* does not compel finding unconstitutional those provisions of the 1974 FLSA amendments which extended application of the Equal Pay Act.

■ Ferris State College's motion for dismissal is plainly controlled by the Sixth Circuit's decision in *Owensboro-Daviess County Hospital, supra.* Because Congress may permissibly extend to state-run facilities dictates of the Equal Pay Act I deny the college's motion for dismissal.

## II.

### THE UNIONS' MOTION TO DISMISS

In its third-party complaint, Ferris State College seeks contribution from both Local 1609 of AFSCME and from Council 7 of the Michigan State Employees Union, because of their participation in the allegedly discriminatory wage scheme. Ferris State contends that § 6(d)(2) of the Equal Pay Act clearly shows Congress' recognition of the fact that labor organizations should be as responsible as employers in creating unlawful wage structures. Section 6(d)(2) reads as follows:

"No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection."

Because Congress was particularly concerned with eliminating discriminatory wage practices, the college argues, this court should read into the Equal Pay Act a right of contribution for employers. In this way, all Equal Pay Act violators would be held responsible for their illegal behavior, and no culpable party would be permitted to defy with impunity the dictates of the Act.

Alternatively, Ferris State maintains that authority for a contribution action can be found under federal common tort law. Under federal common law, the college contends, and independent of the remedial scheme of the Equal Pay Act, contribution may be obtained from a third party when that third party actually caused the injury in question.

AFSCME and the Michigan State Employees Union have moved to dismiss the third-party complaint on two grounds. First, they argue no authority exists under the Equal Pay Act for an employer's action for contribution from a labor organization. Specifically, they maintain that both the statutory language of the Equal Pay Act, and the case law interpreting that language, belie implying a cause of action for contribution in favor of an employer.

Second, the unions contend that even if an employer is permitted to maintain an action for contribution from a labor organization, Ferris State College has failed to sufficiently state a claim for relief in this case. For these reasons, the unions move that the third-party complaint be dismissed.

## A. THE STATUTE.

The enforcement scheme of the Equal Pay Act, as set out in sections 16 and 17 of the Fair Labor Standards Act, provides for both criminal and civil relief.

Section 16(a) makes it a misdemeanor for "any person" to willfully discriminate in employment, or to cause another to discriminate, on the basis of sex. This section, moreover, does not apply to employers alone. As noted by the court in *Tuma v. American Can Co.*, 367 F.Supp. 1178 (D.N.J. 1973), § 16(a) prohibits discriminatory conduct by "any person", and this expressly includes actions of labor organizations designed to cause, or attempt to cause, employers' discrimination.

Section 16(b) is one of the Equal Pay Act's three civil enforcement provisions. It authorizes employee damage actions designed to recover from employers amounts that were unlawfully underpaid. Section 16(b) reads in part as follows:

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

\*     \*     \*     \*     \*     \*

An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

\*     \*     \*     \*     \*     \*

The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

Section 16(c) empowers the Secretary of Labor (now the EEOC) to act on behalf of injured employees. It reads in part:

The Secretary may bring an action in any court of competent jurisdiction to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages. The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to

become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, unless such action is dismissed without prejudice on motion of the Secretary. Any sums thus recovered by the Secretary of Labor on behalf of an employee pursuant to this subsection shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employee or employees affected.

Under this section, the Secretary is authorized to sue an employer for recovery of wages which have been unlawfully withheld. In addition, maintenance of a civil suit instituted by the Secretary under § 16(c) terminates employees' rights to maintain their own damage actions under § 16(b).

Lastly, § 17 provides federal district courts with jurisdiction over Equal Pay Act injunction proceedings. As a result of this section, the EEOC has two enforcement options. It can sue employers under § 16(b) for recovery of unpaid wages and then hold that recovery in a special deposit account for final disbursement. Alternatively, it can sue under § 17 to enjoin employers from withholding payments of the amount owed to its employees, thus burdening the employer with ultimate distribution. This is in fact the course of action chosen by the Secretary of Labor (EEOC) in the present case.

■ The question now before this court is whether Congress intended to create in employers a right to seek contribution from labor organizations for liability incurred as a result of discriminatory wage schemes. Ferris State initially argues that the Equal Pay Act itself authorizes employers' contribution suits. This view, however, is clearly mistaken. Jurisdiction over actions for damages against labor organizations is conspicuously absent from the Act. Indeed, § 16(b) speaks only in terms of employee suits against employers and § 16(c) affords to the Secretary virtually the same rights as exist to employees under § 16(b). A holding to the contrary would ignore the plain and unambiguous meaning of the statutory language.

## B. IMPLYING A RIGHT OF ACTION.

Ferris State College next maintains that because Congress was particularly concerned about sex discrimination in employment it sought to hold liable all parties responsible for Equal Pay Act violations. This is said to include unions whose participation in the alleged discrimination violated § 6(d)(2), even though no express civil damage remedy against labor organizations is expressly provided for in the Equal Pay Act's statutory language. For this reason, Ferris State claims implied authority to seek contribution from the third-party defendants for a portion of whatever liability it may incur.

■ In deciding whether or not an employer has an implied right to seek contribution, the court is guided by *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There, the Supreme Court set out the following prerequisite considerations for implying private rights to sue:

(1) Whether the plaintiff is a member of the class for whose especial benefit the statute was enacted;

(2) Whether there is any indication of Congressional intent to create or to deny the requested cause of action;

(3) Whether an implied right is consistent with the statutory scheme; and

(4) Whether the implied right relates to enforcement traditionally relegated to state law.

These factors were recently applied in a similar case involving the Equal Pay Act, *Northwest Airlines, Inc. v. TWU*, 24 W.H. Cases 285 (1977), *aff'd. in part*, 606 F.2d 1350 (D.C.Cir. 1979). There, the plaintiff airline company had previously been held

monetarily liable for violating the Equal Pay Act by paying its female flight attendants less than was paid to its male attendants for work which was substantially similar. *See, Laffey v. Northwest Airlines, Inc.*, 366 F.Supp. 763 (D.D.C.1973) and 374 F.Supp. 1382 (D.D.C.1974), *aff'd. in part and vacated in part*, 567 F.2d 429 (D.C.Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The airline company then filed suit in federal court seeking a declaratory judgment holding the previous plaintiff-employees' unions liable for reimbursement because both unions had been signatories to the collective bargaining agreement incorporating the illegal wage differential.

The district court in *Northwest Airlines, supra*, held that under the Equal Pay Act, employers did not have the right to maintain actions for contribution against labor organizations. Relying upon similar holdings by other federal district courts,[6] the court decided that the plaintiff-airline company failed to meet the first prong of the *Cort* test because employers were not members of the class for whose special benefit the Equal Pay Act was enacted.

On appeal, the Court of Appeals for the District of Columbia Circuit upheld the district court's conclusion that employers lacked authority under the Equal Pay Act to sue unions for contribution. The appellate court concluded, however, that the lower court was mistaken in exclusively focusing on whether the defendant-employer was a class protected by this legislation. The only question relevant to determining the existence of an implied right to seek contribution, it said, is whether or not the plaintiff-employees could themselves have joined the unions in their original Equal Pay Act complaint. The court noted, at page 1354:

Although the district court also applied the *Cort* test, its analysis incorrectly focused upon whether the employer, Northwest Airlines, was a party for whose spe-

cial benefit the Equal Pay Act was enacted. Those who seek contribution must have been, at one time, defendants and almost by definition, defendants are excluded from the class envisioned in the first prong of the *Cort* test. Thus, under the district court's analysis, any defendant who seeks to become a third-party plaintiff will almost always be denied an implied right of contribution. Significantly, apart from *Cort*, plaintiff's position—not that of the defendant or third-party plaintiff—vis-a-vis the third-party defendant will generally determine the existence of a right of contribution: if the plaintiff could hold either of two defendants liable, a right of contribution will be recognized; if, on the other hand, one of the defendants is protected from suit by the plaintiff, it will also be protected from contribution. Prosser, *Handbook of the Law of Torts* § 50, at 309 (4th ed. 1971).

In deciding whether or not the original plaintiff-employees could have joined the union in their Equal Pay Act complaint, the appellate court analyzed the third *Cort* criterion. Specifically, the court questioned whether an implied damage remedy against unions was consistent with the statutory enforcement scheme, regardless of whether that action was brought by a plaintiff-employee or by a defendant-employer pursuant to a third-party complaint. In affirming the district court, the Court of Appeals said, at page 1355:

The Airlines' claim, however, fails to satisfy the third prong of the *Cort* test—consistency with the legislative scheme. It is improbable that an employee would ever have an implied cause of action under the Equal Pay Act against his union. The statutory scheme envisions three modes of enforcement and to imply a fourth would be inconsistent with the intent evidenced by the existing three. First, under section 216(a) of title 29,

---

**6.** *Usery v. Beloit College*, 12 E.P.D. ¶ 11,203 (W.D.Wisc.1976); *Brennan v. Emerald Renovators, Inc.*, 410 F.Supp. 1057 (S.D.N.Y.1975); *Cook v. Mountain State Telephone and Telegraph Co.*, 397 F.Supp. 1217 (D.Ariz.1975);

*Tuma v. American Can Company*, 367 F.Supp. 1178 (D.N.J.1973); *Wirtz v. Hayes Industries, Inc.*, 9 F.E.P. Cases 493 (N.D.Ohio 1968).

U.S.Code, "any person" who wilfully violates the Act may be subject to criminal penalties. Under section 216(c), the Secretary of Labor may bring suit to recover money owing "to any employee or employees." [2] Finally, section 216(b) of title 29 permits suits by employees against "any employer" who violates the Act. The statutory scheme of enforcement is comprehensive and by omission, it insulates unions from suits by employees. This statutory protection would certainly be frustrated by a declaration that an *employer* could recover from a union, once that employer had been found liable to its employees. Of course, we need not—and do not—definitely resolve the issue of an employee's right to sue a union under the Act. We hold only that the likelihood of the implication of such a right is sufficiently remote to preclude the creation of a cause of action against a union for contribution or indemnification. Such a cause of action would, in reality, create liability on the part of the union for the benefit of employees whom Congress did not intend to protect in such a manner.

■ The reasoning in *Northwest Airlines, supra,* is persuasive. And although the initial plaintiffs in that case were the airline's employees, whereas the plaintiff, in this case is the EEOC, I find this difference to be legally insignificant.

A right of contribution in the present set of circumstances, regardless of whether the plaintiff is a government agency or an injured employee, would simply entitle employers to pass off onto third parties their own liability for violations of the Equal Pay Act. Under a contrary holding, employers could discriminate with impunity, fully aware that the total cost of their unlawful behavior would not be borne by them alone. Indeed, as the district court noted in *Brennan v. Emerald Renovators,* 410 F.Supp. 1057, 1061 (S.D.N.Y.1975), if employers are aware that they alone will bear the economic consequences of Equal Pay Act violations,

a greater incentive would exist for resisting coercive pressures placed on them by unconscionable unions.

Moreover, it is no accident that the enforcement scheme focuses primarily on employers. The Equal Pay Act's restitution provisions, in the words of Senator John F. Kennedy, were designed to ". . . serve as a source of protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage." *United States Code of Congressional and Administrative News,* 87th Congress, 1st Session, 1961, Vol. II at p. 1621. As the court in *Northwest Airlines, supra,* noted at p. 1355:

"The Act's declaration of purpose states that 'wage differentials based on sex . . . [constitute] an unfair method of competition.' Equal Pay Act of 1963, Pub.L.No. 88–38, § 2(a)(5), 77 Stat. 56; see 29 U.S.C. § 202(a)(3) (1976). By declaring these differentials illegal, the Act attempts to regulate competition between various business concerns. Certainly, the parties most appropriately subject to this regulation would be employers, not unions. The Act's focus on unfair competition explains the existence of a greater battery of deterrents against employer-violators than against unions who participate in the breach."

Permitting employer contribution actions against labor organizations where the EEOC has initiated suit, therefore, would only serve to contradict Congress' attempt to regulate commerce and enforce equitable wage practices. By upholding Ferris State College's third-party complaint, this court would unwisely promote inconsistency in Equal Pay Act enforcement. Under the defendant's view, third-party contribution actions would be permissible where the plaintiff is the EEOC, but not where the plaintiff is an employee. Such a remarkable result would undisputably violate Congress' intent.

Indeed, holding unions monetarily liable for employers' discrimination would only

serve to penalize the employees themselves, whose dues comprise the funds out of which the contribution payments would be made. Further, an implied right of action against labor organizations by employees discriminated against in violation of the Equal Pay Act is unnecessary due to other adequate remedies available under state and federal law. Employees subjected to discrimination actively promoted by labor organizations can seek redress under either Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), or under Michigan's recently enacted Elliott-Ralsen Civil Rights Act (M.C.L.A. § 37.2101, *et seq.*; M.S.A. § 3.548(101), *et seq.*). Resort to Equal Pay Act would, therefore, be unnecessary and duplicative. For these reasons, I conclude that an employee's implied right to seek contribution from a labor organization cannot be read into the Equal Pay Act.

Ferris State's reliance on *Hodgson v. Sagner, Inc.*, 326 F.Supp. 371 (M.D.1971), aff'd sub nom., *Hodgson v. Baltimore Regional Joint Board*, 462 F.2d 180 (4th Cir. 1971) is misplaced. In that case, the third-party defendant union compelled the employer, whose wage scheme violated the Equal Pay Act, to pay only partial recompense to its female employees. The remainder of the company's liability was paid out to male members of the union in order to disquiet union unrest. Relying upon its equity powers, the district court determined that even absent a statutory remedy, the union could be held jointly liable.

In *Hodgson*, however the plaintiff Secretary of Labor himself amended the complaint to include the union as a defendant to the action after evidence at trial established the union's egregious behavior. Further, the union in that case not only actively participated in the employer's discriminatory conduct, it actually received payment of the illegally withheld funds. The contribution remedy awarded by the court, therefore, did not act to deplete union coffers.

## C. JOINT TORTFEASOR LIABILITY.

Ferris State College lastly argues that available evidence establishes the unions' direct and impermissible involvement in the allegedly discriminatory wage scheme. By contributing to the employer's potential liability in this way, the college asserts, the unions have in part "caused" whatever Equal Pay Act violation for which the school may in fact be held responsible. Under federal common law, the unions, therefore, are said to be mutually liable as joint tortfeasors.

The unions contend that under joint tortfeasor theory, they cannot be held liable unless their behavior is sufficient to establish violations of § 6(d)(2). They maintain, however, that the third-party complaint and the accompanying affidavit never adequately established "causation" sufficient to constitute a § 6(d)(2) violation. As such, they say, the unions cannot themselves be regarded as joint tortfeasors.

Alternatively, the third-party defendants assert that they cannot be compelled to contribute to the employer's ultimate liability, even if they did in part "cause" the discrimination, because such contribution would contradict the Equal Pay Act's enforcement mechanism by creating a method of enforcement Congress did not intend. The unions therefore contend that the third-party complaint fails to state a claim upon which relief can be granted.

The authority under federal law to initiate a third-party complaint arises out of Rule 14 of the Federal Rules of Civil Procedure. Rule 14 reads in part as follows:

"(a) *When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable for him for all or part of the plaintiff's claim against him . . . The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the

plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff . . ."

Rule 14 does not, however, have the effect of enlarging substantive rights under federal law. 6 Wright and Miller, *Federal Practice and Procedure* § 1448, p. 265 (1971). In this regard, *see, Brennan v. Emerald Renovators, supra,* where the court, in similarly dismissing an employer's contribution action involving the Equal Pay Act, said at p. 1063:

"Professor Moore in his discussion of Rule 14 points out that the Rule 'creates no substantive rights' and 'does not "abridge, enlarge, nor modify the substantive rights of any litigant".' He specifically states that 'The Rule does not establish a right of reimbursement, indemnity nor contribution. * * *' 3 *Moore's Federal Practice,* ¶ 14.03[1] at 153 (2d Ed. 1974)."

■ An employer's right to seek contribution for damages incurred as a result of its liability under the Equal Pay Act rests solely upon the rights Congress created in enacting the Equal Pay Act. If the Act itself confers no right of contribution favoring employers, then no such right exists under federal common tort law which would authorize a third-party action pursuant to Rule 14. Because I conclude that the Equal Pay Act precludes contribution actions, I likewise conclude that this court lacks jurisdiction to hear, under Rule 14, a similar suit based on common tort law. For this reason, and for those already discussed, the unions' motion to dismiss the third-party complaint is granted.